[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The three administrative appeals captioned above were consolidated for a hearing because they include interrelated factual circumstances concerning a sludge pile on the appellant's property at 410 Sackett Point Road in North Haven.
Pursuit of these appeals has been suspended on several occasions. In 1990, the parties joined in requesting a delay in the determination while they pursued an action in United States District Court that they hoped would be dispositive of some of the issues presented. Oral arguments were finally I presented on November 3, 1990.
In the first of the three appeals, Docket #25 06 32, the appellant, Upjohn Company ("Upjohn") sought to amend its complaint to add a claim of federal preemption. It further sought to supplement the administrative record with extrinsic evidence consisting of testimony and documents presented in the trial in United States District Court which concerned issues beyond those reached in these appeals. Both motions were denied.
The history of the consolidated appeals is as follows:
On May 16, 1986, the North Haven Zoning Enforcement Officer issued an order to Upjohn to cease and desist all outdoor storage on its property of chemical sludge created in the defendant's manufacturing premises and to remove all such CT Page 1225 sludge by December 31, 1987. Upjohn appealed the order to the Zoning Board of Appeals, which conducted a hearing and on August 14, 1986 issued a decision upholding the cease and desist order. Upjohn's appeal from that ruling is Docket #25 06 32 (Appeal #1).
In 1988 while its appeal from the upholding of the cease and desist order was pending, Upjohn submitted an application to the North Haven Planning and Zoning Commission seeking, inter alia, approval of a site plan to improve waste water systems on its property. On July 29, 1988, Upjohn submitted an application to the Commission for coastal site plan approval in connection with the same proposed site improvements. The commission held a public hearing on November 14, 1988 and left the hearing open until December 1, 1988 for receipt of written comments from the public. Consideration was resumed on December 7, 1988 after Upjohn filed its written rebuttal comments. The Commission denied both applications on January 17, 1989. The Commission takes the position upon Upjohn's appeal that the applications were denied because the town's zoning regulations prohibit approval of site improvements for any part of a parcel on which a condition is present that violates zoning regulations and that the maintenance of the chemical sludge pile on the premises was an ongoing zoning violation. The Upjohn's appeal from the Commission's denial of its application is Docket No. 28 07 09 (Appeal #2).
On February 9, 1989, Upjohn submitted an application to the Zoning Board of Appeals ("Board") which it characterized as (1) an appeal from the Commission's denial of its applications for site plan approval and (2) an application for a variance of 3.27.1 of the zoning regulations to enable the Commission to issue site plan approval for improvements to its waste water treatment facility.
On April 6, 1989, the Board held a public hearing with respect to these applications. The Board rejected the first portion of the application stating that it lacked jurisdiction to consider such an appeal. It denied the application for a variance on the ground that the hardship which Upjohn invoked as the ground for a variance was self-created. Upjohn's appeal from these determinations is Docket No. 28 44 13 (Appeal #3).
As the owner of the premises and the applicant as to all of the applications described above, Upjohn has established aggrievement as to all three of its administrative appeals.
Appeal #1
By a letter dated May 16, 1986, the Zoning Enforcement CT Page 1226 Officer of the town of North Haven notified Upjohn that she was ordering it to cease and desist all outdoor storage of sludge on its property. The cease and desist order (Record Document #7) noted that the need to remove the sludge pile had been previously called to Upjohn's attention in February 1983, when the Planning and Zoning Commission issued approval of certain zoning applications upon several conditions including, as "Condition 7", that Upjohn submit a plan for removing all sludge stored on the site. Notice of the approval was accompanied by the statement that the approval "is subject to compliance with any and all zoning regulations of the town."
Upjohn's appeal from the cease and desist order issued in 1986 consisted of an attack on the condition imposed in 1983 and the claim that the sludge heap was a valid nonconforming use of the property that preceded any zoning prohibition. When the Board denied Upjohn's appeal from the cease and desist order, Upjohn filed an administrative appeal, which it amended on October 30, 1986.
In its amended appeal, Upjohn asserts that the denial of its appeal to the Board should be set aside because it fulfilled the condition imposed in 1983 even though that condition was illegal and void. Upjohn also asserts that the Board considered evidence "improperly placed in the record," failed to accept Upjohn's compliance efforts as sufficient, failed to "consider the adverse effect moving the sludge would have upon the environment, public safety, public health, sanitation and aesthetics," upheld an unreasonable time period for removal of the sludge, upheld an action of the zoning enforcement officer not authorized by 8-12 C.G.S., deprived Upjohn of use of its property and failed to give effect to the claimed preemptive effect of federal and state environmental regulations.
On March 23, 1987 nearly ten months after the Board filed the record of the administration proceedings, Upjohn filed voluminous documents in a binder denominated "Appendices to the Brief for the Upjohn Company." These documents (consisting of affidavits of persons who were not witnesses in the administration proceeding and documents not submitted in that proceeding) will not be considered, as Upjohn has not established either that the record does not contain a complete account of the proceeding or that additional testimony is "necessary for the equitable disposition of the appeal" pursuant to 8-8 C.G.S. Rather, Upjohn's attempt to supplement the record is based on an effort to have this court review the actions of the Board on grounds and evidence different from what was submitted in Upjohn's presentation of grounds for its appeal to the Board of the cease and desist order. Whether the CT Page 1227 actions of a zoning board of appeals are administrative or legislative, the reviewing court cannot retry the appeal on a different record or substitute its judgment for the discretion vested in the board and can disturb the Board's decision only if the appellant establishes that the Board acted arbitrarily or illegally. Burnham v. Planning and Zoning Commission,189 Conn. 261, 266 (1983); Beit Havurah v. Zoning Board of Appeals,177 Conn. 440, 444 (1979).
Upjohn's proposed appendices invite a trial de novo on a different record than was presented to the Board. The transcript of the Board's hearing of the appeal from the cease and desist order does not suggest that Upjohn was precluded from presenting all evidence relevant to its appeal at the time of the Board hearing, and this court finds no equitable reason to grant the request to supplement the actual record.
The administrative record supports the following findings. On December 23, 1982 Upjohn filed three applications to the Commission. The first application was for a fill permit to cap an old polishing lagoon. The second application was for a permit to build a foundation for an inflatable bubble to provide an enclosure over an existing aeration lagoon, and the third application was for the enclosure itself. (Docs. #12).
At a hearing on January 3, 1983, the Board engaged in general questioning concerning Upjohn's plans concerning sludge on the site, including a query whether Upjohn planned to dispose of such solid waste on the site (Doc. 13, p. 20-22,47-48).
When people at the hearing mentioned the storage of sludge dredged from the lagoons, the Board Chairman commented that any storage and capping of sludge "will be allowed under, I'm sure [a] temporary basis" (Doc. 13, p. 58) and that "it's going to create more odors and increase in the existing stockpile, so it would be a temporary measure as far as this Commission is concerned . . ." (Doc. 13, p. 59).
When a member of the community continued to comment on the storage of sludge, the Chairman said ". . .we don't expect it to stay there forever. . ." (Doc. 13, p. 65). Upjohn's witness made comments to the effect that Upjohn intended to add to the accumulation of sludge on the property (Doc. 13, p. 67).
The Commission granted the application on February 17, 1983, and notified Upjohn of twenty-three conditions to which the approval was subjected, including, as condition #7, "that a plan be submitted with a timetable for the elimination of future sludge production and removal of all existing sludge CT Page 1228 from the Upjohn site." (Doc. 17).
Upjohn filed no appeal from the Commission's actions and did not contest any of the conditions imposed. In a letter to the Commission dated February 17, 1984, Upjohn indicated in writing its understanding that the commission meant that all accumulations of sludge were to be removed ("[a]cknowledging your further interest in the eventual removal of solid wastes accumulated on sites) (Doc. 21, p. 2) but reporting only a study of potential uses for the sludge, not a plan to remove it.
By a letter dated April 23, 1985, the town's zoning officer advised Upjohn that it had not complied with the requirement to remove the stockpiled sludge. (Doc. 22). On June 3, 1985, Upjohn responded that it intended to dispose of the sludge at the rate or one truckload per week if, inter alia, there were no increase in disposal costs. (Doc. 26). In that letter, Upjohn assured the Commission that "there is no change in our understanding regarding the generation and accumulation of solid wastes at our plant." (Doc. 26).
After some overtures by the Commission to propose a satisfactory schedule for compliance with Condition 7 (Docs. 30, 31) the Zoning Enforcement Officer issued a cease and desist order citing Upjohn for violation of the conditions of the 1983 zoning approvals, specifically "your company's failure to remove all sludge stored on the Upjohn Company site." (Doc. 33).
Upjohn appealed the cease and desist order to the Board, which conducted a hearing on July 10, 1986. At that hearing, the Zoning Enforcement Officer presented photographs of a sludge pile which she stated was approximately 45 feet high. She estimated that at the proposed rate of one truckload per week it would take from 86 to 195 years to remove the pile, depending on the size of the truck (Doc. 38, pp. 6, 15).
Upjohn presented evidence to show that it had been stockpiling sludge since 1973 and that it added to the pile continuously until April 23, 1985, the date of what its representative termed "the mud slide disaster". (Doc. 38, p. 24). Upjohn noted that it had expanded the pile horizontally until 1977 and vertically from 1977 to April 23, 1985. Upjohn's brief identified this sludge stockpile as existing at the northern portion of the aeration lagoon.
In a brief filed in support of its appeal to the Board, Upjohn identified the grounds for its appeal as:
1) that Condition 7 was void and unenforceable because it CT Page 1229 was unrelated to the subject of the permits at issue in 1982;
 2) that the sludge pile was a prior noncomforming use and that the Commission could not legally have required its removal;
 3) its proposal to remove the sludge at a very slow rate constituted compliance with Condition 7;
 4) that state and federal environmental statutes preempt enforcement of local zoning regulations and conditions.
In a brief filed at the hearing, (Doc. 36) the Zoning Enforcement Officer pointed out that outside storage of waste was not a permitted use at any time from 1977 to 1983 in the zone in which the Upjohn site is located and that Upjohn had not established a prior nonconforming use.
On August 15, 1986, the Board denied Upjohn's appeal from the cease and desist order of the zoning enforcement officer.
I. THE ENFORCEABILITY OF CONDITION 7.
The correspondence between Upjohn and town officials between the issuance on February 3, 1983 of the conditional approvals and the issuance of the 1985 cease and desist order established that Upjohn was well aware that Condition 7 applied to all or its on-site storage of waste and that it imposed an obligation to remove all the sludge. Until the issuance of the cease and desist order, Upjohn expressed neither confusion as to the scope of the condition nor objection to its validity in its copious contacts with and communications to town officials as reflected in the administrative record.
Without citing any authority to justify such an approach, Upjohn takes the position that it was entitled to accept the benefit of the 1983 approval of its applications for permission to perform site improvements but to reserve an unexpressed objection to a condition imposed and to raise this objection j for the first time in enforcement proceedings three years later.
The procedure for challenging the decision of a municipal planning and zoning commission is set forth in 8-8 C.G.S., which provides for an appeal to the Superior Court within fifteen days of the publication of notice of the decision at issue. CT Page 1230
Appeals to the courts from decisions of administrative authorities exist only under statutory authority. Park City Hospital v. Commission on Hospitals and Health Care, 210 Conn. 697,702 (1989); Sheridan v. Planning Board, 159 Conn. 1, 10
(1969); Bardes v. Zoning Board, 141 Conn. 317, 318 (1954); Long v. Zoning Commission, 133 Conn. 248, 252 (1946). Upjohn cites no authority in support of its assumption that the court may review the condition imposed in 1983 despite Upjohn's failure to file a timely appeal from the imposition of that condition.
While it does not appear that there is a Connecticut case directly on point, in view of the fact that 8-8 C.G.S. limits judicial review to timely appeals of a commission's actions, it is appropriate to hold that one who accepts the benefit of a special permit without appealing from a condition imposed cannot complain later as to enforcement of the condition. 82 Am. Jur.2d Zoning and Planning 263; Zweifel Manufacturing Corp. v. City of Peoria, 144 N.E.2d 593, 595 (Ill. 1957); Stevenson v. Palmer, 448 S.W.2d 67, 69 (Tenn. 1969). This court finds that by failing to file a timely appeal at the time of its imposition Upjohn has waived any objections to Condition 7 and this court is without jurisdiction to consider in an appeal from the upholding of the cease and desist order issues which were subject to appeal pursuant to 8-8 C.G.S. only for the statutory period after the imposition of Condition 7 in 1983.
Upjohn contends that even if Condition 7 is valid, the Board could not reasonably have concluded that it has not complied with the condition. Though the condition required Upjohn to prepare a timetable for removal of the sludge rather than setting an absolute date for completion of removal, the condition was sufficiently plain that the purpose of the timetable was to achieve the actual removal of the sludge pile within a reasonable time. The evidence before the Board was sufficient to establish that in the first year after Condition 7 was imposed Upjohn did nothing substantial to commence compliance and that when it was questioned by the zoning enforcement official, it merely announced some activities which it favored completing first and reported its inquiry into possible uses for the sludge (Doc. 21). Its eventual proposal for a removal schedule was at a rate of a truckload per week to begin early in 1986 (Doc. 26), approximately three years after the condition was imposed. Upjohn did not contest the zoning enforcement officer's estimate that at that rate removal would take as many as 195 years. Even in view of testimony that Upjohn later orally proposed to increase the rate of removal to three to four truckloads per week, the extent of Upjohn's compliance could have been found by the Board to have been a minimal actual removal of sludge and a "plan" that would not CT Page 1231 achieve removal for 21 to 48 years, depending on the size of a truckload. The language of Condition 7 must be given a fair and reasonable meaning, and Upjohn's own correspondence reflects its understanding that the condition required removal, not just the submission of a plan.
Upjohn argues that the Board acted arbitrarily in upholding the cease and desist order because it did not adopt Upjohn's view that removal of the sludge pile was environmentally undesirable. In effect, Upjohn is arguing that the initial imposition of Condition 7 was violative of 8-2
C.G.S., which requires that conditions imposed in the granting of applications must be necessary to protect the public health, safety, convenience, and property values. Upjohn waived this objection when it failed to file a timely appeal from the imposition of Condition 7.
The evidence presented to the Board was sufficient to support its determination that Upjohn had failed to comply with Condition 7, and this determination has not been shown to have been arbitrary, illegal, or beyond the discretion of the Board.
II. DETERMINATION AS TO CLAIMED STATUS AS PRIOR NON-CONFORMING USE.
Upjohn further asserts that its maintenance of the sludge pile could not validly be subjected to a cease and desist order because it was a lawful preexisting nonconforming use of the property, that is, that such use of the property was a permitted use of the property prior to the enactment of Section 3.27.2.24 of the North Haven Zoning Regulations. That regulation, enacted on February 14, 1983, prohibits outdoor storage of waste products.
The Board concluded that Upjohn had not established that maintenance of an outdoor waste stockpile of large proportions was a legal use of its property. To qualify as a valid nonconforming use with lawful continued existence after the adoption of Section 3.27.2.24, the sludge pile would have to have been a lawful use in existence at the time of the enactment of the regulation. Bianco v. Darien, 157 Conn. 548
(1969); Prospect Gardens Convalescent Home, Inc. v. Norwalk,32 Conn. Sup. 214, 222 (1975).
Pursuant to Section 6 of the North Haven Zoning Regulations, Upjohn's site was, prior to February 1983, in a Commercial and Industrial District. The permitted uses for such a district were restricted to those indicated by check marks in a table of permitted uses for the various zones, and pursuant to that section, "[n]o use shall be permitted in any CT Page 1232 Commercial or Industrial District except one which is indicated by a check mark. . .applicable to the district in which such use is located." The permitted uses set forth in 6.1.1 — 6.1.74 do not include storage of sludge or chemical waste. Upjohn contends that the maintenance of the sludge pile was a lawful use pursuant to 6.1.71, which permits "accessory uses customarily incidental to a permitted use on the same premises", taking the view that storage of by-products of those manufacturing processes permitted pursuant to 6.1.61 and 6.1.62 was a permitted use.
If this construction of a permitted accessory use were accurate, every single household in North Haven would have been able to maintain an on-site permanent pile of household refuse and every business would have been authorized to maintain a permanent pile of whatever debris resulted from its operations. Since some of the explicitly permitted uses enumerated in Section 6 of the regulations concern storage of various substances, long term storage of waste cannot logically be viewed as a generally authorized accessory use. (See 6.1.55, 6.1.65, 6.1.66, 6.1.67, 6.1.72).
An "accessory use" is one which is customary in connection with the primary use of use land and minor or subordinate to the primary use. Lawrence v. Zoning Board of Appeals,158 Conn. 509, 512-13 (1969). The Supreme Court has stated that the customariness of a use depends on the size of the lot in question, the nature of the primary use, the use made of adjacent lots by neighbors and the economic structure of the area. Id. The zoning authority apparently viewed the temporary storage of chemical by-products before their removal to permanent deposit areas as an accessory use but determined that the long-term storage of a very large quantity of waste was not an accessory use.
The volume of waste being stored on the Upjohn site and the duration of the storage are facts that support the zoning authority's determination that the use was not a lawful nonconforming accessory use. Upjohn has not demonstrated that the conclusion of the zoning authority that the sludge pile was not a valid nonconforming accessory use is not reasonably supported by the record or that in rejecting Upjohn's claim in this regard the authority acted illegally, arbitrarily, or in abuse of the discretion vested in it. Beit Havurah v. Zoning Board of Appeals, 177 Conn. 440, (1979).
Because this court finds that the Board did not act illegally or abuse its discretion in determining that Upjohn had not established that its use was a lawful one at the time of the enactment of Section 3.27.2.24, there is no reason to CT Page 1233 consider Upjohn's further claim that expansion of the use after the enactment was lawful.
III. CONDUCT OF THE HEARING.
Upjohn contends that the determination of the Board should be set aside because the proceedings were unduly affected by the desires of what Upjohn characterizes as "a group of vocal citizens who are highly critical of Upjohn's operations." (Upjohn brief, at p. 30). Upjohn faults the zoning authorities for receiving the comments of citizens "who lack hard, scientific information" and who applauded comments by the zoning enforcement officer. Upjohn has not demonstrated that North Haven's zoning authorities did other than to give it a full, thoughtful and courteous hearing, despite its concomitant responsibility to allow an open meeting at which members of the community chose to make comments. The record, read as a whole, indicates that the determinations from which Upjohn appeals were made by zoning authorities who consulted the applicable standards but did not concur with Upjohn's view that it could choose not to comply with Condition 7 but to pursue a solution more to its liking.
IV. PREEMPTION
The final ground asserted by Upjohn in its amended appeal is that the Board acted outside the scope of its authority because "local zoning regulation of Upjohn's waste water treatment system, including its sludge pile, is preempted by the state statutory scheme giving authority for such regulation to the Department of Environmental Protection to the exclusion of the North Haven Planning and Zoning Commission." This statement of a ground for appeal implies that the State Department of Environmental Protection ("DEP") authorized the creation of the sludge pile as part of a plan for waste disposal. This implication is unsupported by the record, which indicates, rather, that Upjohn was required to address environmental questions raised by DEP concerning the sludge pile and found its interests better served by the solutions acceptable to DEP than by the removal ordered in Condition 7 imposed by the zoning authorities.
The fact that Upjohn's sludge pile is subject to the Federal Resource Conservation and Recovery Act ("RCRA") (42 U.S.C. § 6091 et seq.) does not render use of the Upjohn property for waste disposal a legal use under North Haven's zoning regulations, and there is no support in the record for any argument based on an assumption that DEP had approved the use of the North Haven site for use as a waste disposal facility. After a lengthy discussion of local vs. state powers CT Page 1234 with regard to the siting of waste disposal facilities, Upjohn concedes at page 23 of its brief that the provisions discussed "do no apply directly to Upjohn's sludge pile," and Upjohn has not demonstrated that the Board's upholding of the cease and desist order was in conflict with a DEP permit or excluded facilities that DEP or federal authorities had found to be. Necessary, as in City of Shelton v. Commissioner of DEP,193 Conn. 506 (1984).
The United States Court of Appeals for the Second Circuit has upheld a district court ruling that the town's zoning regulations were not preempted by federal or state law or enforcement efforts. North Haven Planning Zoning Commission v. Upjohn Co., ___ F.2d ___, (2d Cir. slip op. Dec. 14, 1980 Docket #90 16 38).
The record contains no indication that the removal of sludge ordered by North Haven required Upjohn to follow a course prohibited by state or federal environmental authorities. Having established no actual conflict of regulatory interests in its situation, Upjohn has demonstrated no occasion for assessing a claim of preemption.
The time identified in the cease and desist order has passed, and Upjohn's objections to the deadline imposed are therefore moot. In the absence of any indication as to what new compliance deadline will be established, the court does not address Upjohn's claims in this regard.
Appeal #1 is dismissed.
APPEAL #2
In 1988, Upjohn filed an application with the North Haven Planning and Zoning Commission seeking site plan approval (1) to install preaeration and UV Peroxide Systems as improvements to its waste water treatment system; (2) to store waste water treatment sludge on the existing waste pile for a period of five years, with installation of a temporary cap on the pile.
The Commission considered the applications at a public hearing on November 14, 1988. At the conclusion of the comments of witnesses, the chairman announced that the record would be held open until December 1, 1988 for further written comments from the public (Doc. 12, pp. 77, 85) and that Upjohn would be afforded an opportunity to file a written response to those comments by December 7, 1988. Upjohn did not object to this procedure but specifically requested time to respond to the written comments filed. Id. CT Page 1235
In its written response, Upjohn pointed out that the two parts of its application were severable and that the Commission had the authority to approve one but not the other (Doc. 21, p. 7).
On December 12, 1988 and January 17, 1989, the Commission held a deliberative session. At the latter session it voted to deny both segments of the application. Upjohn has appealed only from the denial of a special permit to install the waste water treatment improvements. As to that portion of the application, the Commission stated the reason for denial as its policy not to approve an application for site improvements if a zoning violation existed on the site (Doc. 31, p. 51, Doc. 32).
Upjohn appeals on the grounds that the Commission exceeded its authority by rejecting a site plan application that met all applicable legal requirements for approval set forth in the zoning regulations, that it failed to consider state environmental standards in assessing the benefits of the proposed improvements to the waste water treatment system, and that it illegally considered evidence outside the record.
V. Reason for Denial of Application
When acting on a special permit or application, a zoning commission acts in an administrative capacity. Sheridan v. Planning Board, 159 Conn. 1, 16 (1969); Maher v. Town Planning and Zoning Commission, 154 Conn. 420, 422 (1967). Its function is to determine whether l) the applicant's proposed use of the property is expressly permitted under the commission's regulations, 2) whether the standards in the relevant zoning regulations are satisfied, and 3) whether conditions necessary I to protect public health, safety, convenience and property values, as provided by 8-2 C.G.S. can be established Housatonic Terminal Corporation v. Planning and Zoning Board,168 Conn. 304, 307 (1975); A.P. W. Holding Corp. v. Planning and Zoning Board, 167 Conn. 182, 185 (1974).
A commission cannot require the applicant to meet standards not contained in the regulations. Kosinski v. Lawlor, 177 Conn. 420, 422-3 (1979); Parish of St. Andrew's Church v. Zoning Board of Appeals, 155 Conn. 350, 357 (1967); Powers v. Common Council, 154 Conn. 156, 160-61 (1966); Anderson, American Law of Zoning 3d 21.25 p. 738 (1986).
In reviewing site plans as to applications for special permits, a commission has no independent discretion beyond determining whether the plan complies with the applicable regulations and is under a mandate to apply the requirements of the regulations as written. Norwich v. Norwalk Wilbert Vault CT Page 1236 Co., 208 Conn. 1, 13 (1988), Allied Plywood, Inc. v. Planning and Zoning Commission, 2 Conn. App. 506, 512, cert. denied,194 Conn. 808 (1984).
The Commission gave six reasons for its denial of the paired applications as to the waste water treatment plant and the sludge pile. In its revised special defense, the Commission stated that the only reason for the denial of the application concerning the waste water treatment plant was "the existence of the chemical sludge pile, which pile represents an ongoing zoning violation," in that "the regulations of the Town of North Haven Planning and Zoning Commission prohibit the issuance of site plan approval for any part of a parcel when a separate and distinct part of a parcel is in violation of the Zoning Regulations."
The regulations invoked by the Commission as authority for its denial of the application at issue are 3.27, 3.27.1, and 3.27.2 of the North Haven zoning regulations.
Section 3.27 provides that submission of a site plan is required for the development of any property or structure for a new use or any expansion of any existing use or change of use of a property or structure "[t]o aid in determining the conformity of a proposed building or use with specific provisions of these regulation;" [Emphasis supplied].
At 3.27.1 the regulations provide that:
 [t]he Planning and Zoning Commission shall not approve a duly submitted site plan unless it shall find that such plan conforms to the requirements of these Regulations. In reviewing the site plan, the Planning and Zoning Commission shall also take into consideration the public health, safety, and general welfare, and shall set appropriate conditions and safeguards which are in harmony with the general purpose and intent of these regulation, particularly in regard to achieving the following: [a list of specific considerations as to traffic, environment, and visual screening follows].
The criteria set forth in 3.27.1 do not, on their face, indicate that a reason for denial of an application is the presence of zoning violations on the site apart from the site development features of the site plan submitted as to the desired development.
Section 3.27.2, titled "Application Procedure" requires at 3.27.12 and 13 that site plans include the location and CT Page 1237 dimension of all existing buildings and other features of the site, including contours and, at 3.27.2.14, "proposed use or uses of all land and buildings." Section 3.27.2.27 requires that a site plan set forth "[c]onditions specified by the Zoning Board of Appeals or Planning and Zoning Commission in the approval of any variance or special approval related to the subject property."
The Commission takes the position that the requirement of submission in a site plan of information concerning the entire site upon an application to change or develop only a portion of the site puts an applicant on notice that the Commission's review will be of the use of the property as a whole and will not be restricted to that portion of the site plan which is the proposed new construction or use giving rise to the application.
The fact that the Commission requires full information about the site as a whole does not alter the scope of 3.27, which is "to determine the conformity of a proposed building or use with the specific provisions of these regulations." (emphasis supplied). While there may certainly be instances in which a proposed new use or development which gives rise to the filing of a site plan is rejected for reasons that relate to some connection of the new development to other features of the site as a whole, the mere requirement of full information does not change the focus of the cited zoning regulation from scrutiny of the "proposed building or use" and its conformity (rather than the conformity of the entire site) to the standards of the zoning regulations. The Commission has held Upjohn's application to a standard not explicitly stated in its regulations, and its action is, for that reason, beyond the scope of its authority.
The Commission contends that 3.27 can be interpreted as a whole to create a standard that includes inspection of the whole site on which an improvement is proposed. Such an interpretation would be an unauthorized expansion of the Commission's authority as to special permits.
The statutory grant of authority that underpins 3.27 et. seq. is 8-3 (g) C.G.S. That statute provides for a determination based on the proposed project itself:
 The zoning regulation may require that a site plan be filed with the commission. . . to aid in determining the conformity of a proposed building, use or structure with specific provisions of [zoning] regulations. (Emphasis supplied).
CT Page 1238
The Commission contends that unless 8-3 (g) C.G.S. and its own regulations at 3.27 et. seq. are read to allow denial of a proposal on the ground of an existing unrelated zoning violation on the site, an important means of enforcing zoning regulations will be lost.
Section 8-3 (e) C.G.S. provides that a zoning commission shall provide for the manner in which the zoning regulations shall be enforced, and the North Haven zoning regulations provide at 12.2 for identification of violations by a zoning enforcement officer and, at 12.4 for prosecution of violations pursuant to Chapter 124 of the Connecticut General Statutes.
Section 8-12 C.G.S., the portion of Chapter 124 titled "Procedure When Regulations Are Violated" provides that compliance with zoning regulations shall be achieved by the institution of a cease and desist order or of a legal action. That statute does not, on its face, authorize enforcement via denial of an application for unrelated site development which itself complies with the zoning regulations.
This court finds that the commission impermissibly denied site approval as to the waste water treatment system for reasons not related to the merits of the application for those improvements and that its action hereby exceeded its powers under 8.3(g). Accordingly, Appeal #2 is sustained on that ground. The application for a special permit for improvements to the waste water treatment plant is remanded to the Commission for consideration of that proposed development on its merits and the conformity of the proposed alterations with the applicable zoning regulations.
VI. Ex Parte Communications
Because the application is remanded to the Commission for consideration, it is not necessary to adjudicate Upjohn's claim that the prior decision was made, at least in part, upon consideration of issues or evidence outside the evidence formally received. There is no reason to suppose that upon remand the Commission will fail to conduct its deliberations in accordance with the standards set forth in Feinson v. Conservation Commission, 180 Conn. 421, 482 (1980).
Appeal #3
In this appeal, Upjohn challenges the conclusion of the Zoning Board of Appeals that it lacked jurisdiction to entertain an appeal from the denial of the application for site plan approval for the improvement to the waste water treatment plant at issue in Appeal #2. Upjohn further asserts that the CT Page 1239 Board improperly denied its request for a variance from the Commission's application of 3.27.1 of the zoning regulation to bar improvements to a site containing an identified zoning violation unrelated to the proposed project.
The court has determined that the Commission acted outside the scope of its authority in denying the application for reasons not related to the proposed improvements to the waste water treatment system and has ordered a remand for consideration bounded by its regulation as interpreted within, the statutory scope of 8-3 (g) C.G.S.
Because of the disposition of the central issue of Appeal #2, any adjudication of the issues raised in Appeal #3 would not pertain to an actual case or controversy and would be academic only. Courts are to avoid advisory opinions on abstract principles. Rosnick v. Zoning Commission, 172 Conn. 306,308-9 (1977); Kellems v. Brown, 163 Conn. 478, 496, appeal dismissed, 409 U.S. 1099.
Since Upjohn's appeal to the Board and application for a variance were both predicated upon the Commission's denial of its application for a special permit, and since that application has been remanded for consideration in accordance with the applicable standards for review, Appeal #3 is moot, and it cannot be said that the situation is likely to be replicated or that it is capable of repetition yet will evade review. Appeal #3 is dismissed.
Conclusion
Appeal #1 is dismissed. Appeal #2 is sustained and the application for a special permit to improve the waste water treatment system is remanded to the Commission for consideration in accordance with the applicable standards for review of such applications. Because of this relief, Appeal #3 is dismissed as presenting academic issues which cannot be assumed to recur upon the consideration of the application on remand.
BEVERLY J. HODGSON JUDGE OF THE SUPERIOR COURT