[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Stephen A. Belair and Stacey M. Belair, appeal from a decision of the defendant, Town of Newtown Planning and Zoning Commission ("Commission"), granting the application of the defendant, Larry Edwards ("Edwards"), for a special exception to construct an office building.
On January 4, 1994, Edwards submitted an application to the Commission for a special exception to construct a 8,400 square foot office building on property owned by Edwards and located at the corner of Peck's Lane and Route 25 in Newtown, Connecticut. (Return of Record ("ROR"), Item 27: Application for Special Exception.) The Newtown Zoning Regulations ("Regulations") allow as a permitted use in industrial zones "buildings containing offices occupied by one or more businesses or professional entities but excluding offices devoted to the sale of real or personal property to the general public" provided that the CT Page 1493-P special exception is obtained in accordance with the criteria set forth in section 8.04. (ROR, Item 36: Regulations, Secs. 4.18.400, 4.18.470.) The property subject to the special exception is located in an M-2 industrial zone. (ROR, Item 34: Transcript of Public Hearing, February 17, 1994, pp. 7, 24, 26; Item 14: Memorandum from Elizabeth Stocker, Director of Community Development, to the Commission, January 24, 1994.) The Regulations permit only specific principal uses in M-2 zones, the one at issue in this matter is set forth above.
General Statutes, Sec. 8-3c(b) and Regulations, Sec. 8.04.400 require a public hearing for special exceptions. The Commission held a public hearing on the application on February 17, 1994, and a continuation of that hearing was held on March 17, 1994. (ROR, Item 34: Transcript, February 17, 1994; Item 35: Transcript, March 17, 1994.) The continuation was permitted to allow Edwards to submit to the Commission an updated traffic report and to determine the availability of utility lines to the subject property. (ROR, Item 34: Transcript, February 17, 1994, p. 19; Item 35: Transcript, March 17, 1994, p. 1.)
At its meeting on March 17, 1994, the Commission approved CT Page 1493-Q Edwards' application by a 4 to 1 vote with a stipulation for the extension of a sidewalk. (ROR, Item 6: Letter from John Deegan, Chairman, Planning Zoning Commission, to Edwards, March 18, 1994; Item 2: Minutes of Commission Meeting, March 17, 1994, p. 3.) In granting the application, the Commission acted pursuant to authority granted to it by General Statutes, Sec. 8-2.[1] The Commission published notice of its decision and sent a certified letter to Edwards within the statutorily prescribed fifteen day period. General Statutes, Sec. 8-3(g); (ROR, Item 31: Notice of Publication, March 25, 1994; Item 6.)
On April 13, 1994, the plaintiffs filed a timely appeal to the Connecticut Superior Court, Judicial District of Danbury at Danbury. The plaintiffs appeal from the decision of the Commission under General Statutes, Sec. 8-8, which states "any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located." The plaintiffs claim that the Commission acted illegally, arbitrarily and in abuse of its discretion. The plaintiffs maintain that the Commission failed to decide if all of the requirements of the Regulations were met and CT Page 1493-R that it granted the special exception without due consideration and in disregard of the evidence in opposition to the application for the special exception. (Plaintiffs' Brief, p. 8.)
The plaintiffs filed a memorandum in support of their appeal on August 19, 1994. The Commission filed its brief in opposition on September 19, 1994, and Edwards filed his brief in opposition on September 20, 1994.[2]
Before proceeding further, the court must find that the applicants are aggrieved.
Aggrievement is a jurisdictional question and a prerequisite to maintaining an appeal. Winchester Woods Associates v. Planning Zoning Commission, 219 Conn. 303, 307, 592 A.2d 953 (1991);DiBonaventura v. Zoning Board of Appeals, 24 Conn. App. 369, 373,588 A.2d 244 (1991). "The question of aggrievement is essentially one of standing." DiBonaventura v. Zoning Board of Appeals, supra, 373. The issue of aggrievement is a question of fact.McNally v. Zoning Commission, 225 Conn. 1, 7, 621 A.2d 279
(1993). CT Page 1493-S
Those persons who own land that abuts or is within a radius of 100 feet of any portion of the land involved in the decision of a planning and zoning commission are statutorily aggrieved and need not prove aggrievement. See General Statutes, Sec. 8-8(a)(1);Smith v. Planning Zoning Board, 203 Conn. 317, 321,534 A.2d 1128 (1987). The plaintiffs in this matter are abutting landowners and, therefore, they are aggrieved. (ROR, Item 4: Exhibit III, Map, Submitted by the Belairs to the Commission at the February 17, 1994 Public Hearing; Plaintiff's Exhibit 1 from October 23, 1994 Hearing, Warranty Deed, October 31, 1977; Plaintiffs' Brief, p. 3.)
1. ZONING REGULATIONS, SEC. 8.04.740
The plaintiffs argue that the proposed use does not meet the standards of Regulations 8.04.740 because the special exception use might create additional traffic congestion on Peck's Lane.[3] (Plaintiffs' Brief, pp. 3-5.) The plaintiffs' home is located on Peck's Lane, approximately 75 feet from the proposed office site. (ROR, Item 4: Exhibit III submitted by the Belairs CT Page 1493-T to the Commission at the February 17, 1994 Public Hearing.) The Regulations delineate standards for uses permitted only by special exception and provide that "[n]o special exception shall be granted by the Commission unless it finds that all of these standards have been or will be met. Approval without such findings shall be null and void. . . ." (ROR, Item 36: Regulations, Sec. 8.04.700.)
The plaintiffs maintain that the Commission's decision is void because it could not and did not make a finding that the proposed use would not create additional congestion or a traffic hazard on Peck's Lane. (Plaintiffs' Brief, p. 4.) The plaintiffs contend that neither the applicant, his expert, nor the Commission questioned the impact that the office building would have on Peck's Lane. (Plaintiffs' Brief, p. 4.) According to the plaintiffs, the traffic study submitted by Edwards focused solely on Route 25. (Plaintiffs' Brief, p. 4.)
The Commission argues that it made the requisite finding under Sec. 8.04.470 as to existing streets, including Peck's Lane. (Defendant Commission's Brief, p. 8.) The Commission CT Page 1493-U further maintains that even if it did not expressly make a finding with respect to Peck's Lane, such failure does not render the Commission's approval invalid. (Defendant Commission's Brief, p. 9.) Defendants cite Stankiewicz v. Zoning Board of Appeals,15 Conn. App. 729, 546 A.2d 919 (1988) for the proposition that if a zoning authority fails to give reasons for its actions, or if its stated reasons are inadequate, "the trial court must search the record to determine whether a basis exists for the action taken." Id., 732.
The applicant in the present action submitted two traffic impact studies prepared by I. K. Chann Associates, Transportation Engineers. (ROR, Item 26: I. K. Chann Associates Traffic Impact Study; Item 8: Letter from I. K. Chann Associates to Edwards, March 11, 1994, and attached updated traffic study.) The first study, prepared in 1987, was updated by a second study prepared in 1994. (ROR, Item 8.) The updated study consisted of comparing the Connecticut Department of Transportation 1992 traffic count on Route 25, south of Peck's Lane, to the Department's 1985 count. (ROR, Item 8.) According to the updated study, there was a 29 percent traffic increase in this area over a seven year CT Page 1493-V period. (ROR, Item 8.) The study determined, however, that peak hour volumes in 1992 were below the design capacity of the roadway. (ROR, Item 8.) The updated traffic study concluded that the increase of 28 to 38 vehicle trips generated by the proposed office building during peak hours would not "adversely impact Route 25 in the vicinity of the site." (ROR, Item 8.) In addition, the proposed site plan includes a widening of Route 25, southbound "to 22 feet from the centerline with 180 feet transition each direction." (ROR, Item 14: Memorandum from Elizabeth Stocker, Director of Community Development, to the Commission, January 24 1994.)
The 1987 study included observations of traffic patterns on Peck's Lane. (ROR, Item 26, p. 3.) The traffic capacity of Route 25 at its intersection with Peck's Lane was also noted. (ROR, Item 26, p. 4.) The study concluded that "Route 25 at the site and its intersection with Peck's Lane is operating at very desirable service levels and considerable reserve capacity is available for future growth." (ROR, Item 26, p. 5.) The 1987 study also contained a projected traffic analysis for 1989. This analysis included projections of the two-way traffic volume at CT Page 1493-W the Route 25 and Peck's Lane intersection, including traffic on the proposed Peck's Lane driveway. (ROR, Item 26, p. 7.) The 1987 study estimated that 20 percent of the anticipated site traffic will be traveling via Peck's Lane. (ROR, Item 34: Transcript, February 17, 1994, pp. 7-8; Item 26, pp. 7, 10.) On the basis of this information, the study concluded that the proposed project would not adversely affect the "area roadway system." (ROR, Item 26, p. 11.)
The 1987 traffic study was submitted to the Commission at the February 17, 1994 public hearing. (ROR, Item 34: Transcript, February 17, 1994, p. 5.) Edwards submitted the updated study to the Commission at the March 17, 1994 public hearing. (ROR, Item 35: Transcript, March 17, 1994, p. 2.) At the February 17, 1994 hearing, Commissioners Adams and Roy questioned the ingress and egress patterns at the proposed site. (ROR, Item 34: Transcript, pp. 17, 19.) In response to Adams' concern that traffic on Route 25 was heavier than indicated in the 1987 traffic study, Edwards informed the Commission that commuter traffic was at its peak at the time of that study and has dropped off since that time. (ROR, Item 34: Transcript, February 17, 1994 p. 18; Item 35: CT Page 1493-X Transcript, March 17, 1994, p. 3.) In addition, Commissioner DeFilippe asked Edwards whether there was sufficient parking at the site to prevent parking on Peck's Lane. (ROR, Item 34: Transcript, February 17, 1994, p. 21.) Edwards explained the parking formula and stated that there would be sufficient parking. (ROR, Item 34: Transcript, February 17, 1994, p. 21.)
Plaintiff, Stephen Belair, addressed the Commission and voiced his concern that the office building would increase parking on Peck's Lane. (ROR, Item 34: Transcript, February 17, 1994, p. 23.) Plaintiff, Stacey Belair, also raised various concerns, including parking on Peck's Lane and the delays incident to increased traffic congestion. (ROR, Item 34: Transcript, February 17, 1994, p. 27.) In addition, the plaintiffs submitted a typewritten report to the Commission outlining their objections to the proposed site. (ROR, Item 4: Exhibit I submitted by the Belairs to the Commission at the February 17, 1994 Public Hearing.) With respect to traffic, the plaintiffs expressed concern that increased traffic would endanger children living on Peck's Lane, including their son. (ROR, Item 4: Exhibit I; Item 34: Transcript, February 17, 1994, CT Page 1493-Y pp. 28-29.)
On March 17, 1994, the Commission approved, by a 4 to 1 vote, Edwards' application for a special exception. (ROR, Item 2: Minutes of Commission Meeting, March 17, 1994, p. 3.) The Commission acted to approve the application stating the following reasons: "1. The property is zoned M-2 Industrial. 2. The use is allowed in an M-2 zone. 3. The updated traffic study shows no adverse impact in traffic on Route 25. 4. The application met the criteria for special exception." (ROR, Item 2: Minutes of Commission Meeting, March 17, 1994, p. 3.)
Support for the decision of the Commission may be found in the record. The record supports a finding that the proposed use does not create additional congestion or a traffic hazard on existing streets. (ROR, Item 34: Transcript, February 17, 1994, pp. 6, 8, 17-20.) The traffic studies submitted for the Commission's review conclude that no adverse impact would occur in the vicinity of the proposed site. Peck's Lane is within this vicinity. The Commission addressed and heard evidence regarding egress from and ingress to the office building and Peck's Lane CT Page 1493-Z and heard evidence regarding parking on Peck's Lane. Although the traffic study found that there would be a 20 percent increase in traffic, the additional traffic was within traffic capacity limits. Therefore, the court finds that the record supports the Commission's finding that the proposed use would not create additional congestion on Peck's Lane.
2. FAILURE TO PROTECT THE PUBLIC INTEREST AS REQUIRED BY GENERAL STATUTE, SEC. 8-2
General Statutes, Sec. 8-2 provides, in relevant part, that municipal zoning commissions may regulate the use of land. It also states that the regulations may provide that certain uses are permitted only after obtaining a special exception subject to standards set forth in the regulations and to "conditions necessary to protect the public health, safety, convenience and property values." General Statutes, Sec. 8-2.
The plaintiffs contend that the Commission did not take into consideration objections to the special exception which were raised at the public hearings, and therefore failed to establish CT Page 1493-AA conditions in the approval which "would protect the public health, safety, convenience and property values of the community in general and the Plaintiffs in particular." (Plaintiffs' Brief, p. 7.) The plaintiffs argue that the Commission's approval was supported solely by broad references to the Regulations and with little basis in fact. (Plaintiffs' Brief, p. 8.)
The Commission argues that section 8-2 is not an independent basis apart from the zoning regulations upon which the Commission may rely to deny the application. The Commission cites Powers v.Common Council, 154 Conn. 156, 161, 222 A.2d 337 (1966) in which the court emphasized "[a]lthough 8-2 of the General Statutes provides that public health, safety, convenience and property values may be considered in making a determination on a special permit, this is to be done in conjunction with, not as an alternative to, the standards which the zoning regulations themselves must provide." Id., 161. The Commission notes, however, that the Regulations incorporate the standards set out in section 8-2. (Defendant Commission's Brief, p. 15.) That is, both section 8-2 and the Regulations require that the proposed use shall not create a health or safety hazard, nor substantially CT Page 1493-BB impair property values in the neighborhood and both authorize the Commission to grant the special exception subject to conditions designed to ensure that these standards are met.
The record contains evidence of the Commission's consideration of criteria regarding public health, safety and property values. For example, the special exception was approved subject to the condition that the sidewalk located on the south side of the building be extended to the parking lot for convenience of access. (ROR, Item 13: Memorandum from Ronald E. Bolmer, Town Engineer to Rita Macmillan, Administrative Assistant, January 28, 1994; Item 2: Minutes of Commission Meeting, March 17, 1994, p. 2; Item 6: Letter of Approval from John W. Deegan to Edwards, March 18, 1994.) Also, the Health Department recommended approval of the proposed site plan with a restriction that the facility be limited to a maximum of fifty-three employees, that it exclude high volume water users and contain stipulations to be met before building permits would issue. (ROR, Item 14: Memorandum from Elizabeth Stocker, Director of Community Development to the Commission, January 24, 1994; Item 17: Letter from Karen Cables, Assistant Sanitarian, to the CT Page 1493-CC Commission, January 10, 1994; Item 34: Transcript, February 17, 1994, p. 12.) Moreover, the Commission was aware of the Zoning Board of Appeals approval of the variance sought by the previous owners of the subject parcel along with the stipulations attendant to that approval. (ROR, Item 15: Docket Decision 85-26 from Alton Cashman, Chairman, Zoning Board of Appeals, August 7, 1985; Item 34: Transcript, February 17, 1994, pp. 3-4, 7.) Specifically, the approval was conditioned upon particular lighting requirements, removal of existing structures on the land, screening property boundaries with evergreens, and limitations on parking. (ROR, Item 15; Item 34: Transcript, p. 16.) In addition, the Newtown Fire Marshall withheld approval until the site plans were modified to include adequate fire lanes. (ROR, Item 24: Memorandum from Newtown Board of Fire Commissioners, December 1, 1988.) Furthermore, Newtown Country Realty, Inc. submitted an opinion to the Commission stating that approval of the plan would have "the highest positive effect toward increasing the neighboring property values." (ROR, Item 23: Letter from Newtown Country Realty, Inc. to the Commission, August 16, 1989; Item 34: Transcript, February 17, 1994, p. 10.) The Commission also received a letter from a neighboring property CT Page 1493-DD owner voicing their approval of construction which would replace the structures currently existing on the property. (ROR, Item 12: Letter from Robert and Jane Cottingham to the Commission, February 17, 1994.)
On the basis of the record, there was sufficient evidence for the Commission to find that the standards set forth in the Regulations and General Statutes, Sec. 8-2 regarding the protection of the public interest were satisfied. As stated previously, where the regulations and statutes are satisfied, a commission has no discretion to deny a special exception. Felsmanv. Zoning Commission, 31 Conn. App. 674, 678.
3. ACTION OF THE COMMISSION IN GRANTING THE SPECIAL EXCEPTION ARBITRARILY, ILLEGALLY, AND IN ABUSE OF DISCRETION
The plaintiffs also appeal on the ground that the Commission granted the special exception without due consideration of the criteria set forth in the Regulations for approval of a special exception. (Plaintiffs' Brief, pp. 8-14.) The plaintiffs state that in granting the special exception without sufficient CT Page 1493-EE evidence and without stating on the record sufficient reasons for granting the application, the Commission acted illegally, arbitrarily and in abuse of discretion. (Plaintiffs' Brief, p. 12.) The Commission counters that its action is fully supported by the record and emphasizes that the court cannot substitute its judgment for that of the Commission. (Defendant Commission's Brief, pp. 17, 20.)
The record in this matter reveals that the Commission received evidence relevant to the following special exception criteria.
Regulations, Sec. 8.04.710 provides that "[t]he proposed use shall be in harmony with the general character of the neighborhood." The area in which the subject property is located consists of a mixture of uses, including industrial, commercial and residential. (ROR, Item 26: Traffic Impact Study, p. 2.) Furthermore, the proposed use is allowed in a M-2 zone. (ROR, Item 2: Minutes of Commission Meeting, March 17, 1994, p. 3; Regulations, Sec. 4.18.400; 4.18.470.) Edwards informed the Commission that the architectural design of the proposed building CT Page 1493-FF is in keeping with the rural colonial character of the area. (ROR, Item 34: Transcript, February 17, 1994, pp. 10-11,29-30.) The building itself is only two stories, 28 feet high, and will have clapboard siding and a high-pitched roof. (ROR, Item 34: Transcript, February 17, 1994, pp. 10-11, 30; Item 14: Memorandum from Elizabeth Stocker, Director of Community Development to the Commission, January 24, 1994.) In addition, the site plans provide that the boundary lines which border residential property will be screened by rows of white pine trees. (ROR, Item 34: Transcript, February 17, 1994, p. 9; Item 15: Docket Decision 85-26 from Alton Cashman, Zoning Board of Appeals, August 7, 1985.) The court finds that the evidence before the Commission was sufficient for the Commission to conclude that the proposed site was in harmony with the general character of the neighborhood.
Similarly, Regulations, Sec. 8.04.770 provides that "[t]he architectural design of the proposed building shall be in harmony with the design of other buildings on the lot and within 1,000 feet of the perimeter of the lot for which the special exception is sought." The record indicates that the proposed building, CT Page 1493-GG which will be the only structure on the site, is in harmony with the design of nearby buildings. The properties in the vicinity of the proposed site consist of two residential properties which are adjacent to the subject property, a cemetery, undeveloped property across the street, and commercial property consisting of Ethan Allen, a bank and an antique shop. (ROR, Item 34: Transcript, February 17, 1994, p. 10.) As set forth above, the proposed design of the office building is consistent with neighboring structures.
Regulations, Sec. 8.04.730 states that "[t]he proposed use shall not substantially impair property values in the neighborhood." Edwards submitted an opinion letter from Newtown Country Realty, Inc. stating that the proposed site will have a positive effect on property values. (ROR, Item 23: Letter from Newtown Country Realty, Inc. to the Commission, August 16, 1989.) Approval of the site plan would result in removal of two structures, a barn and a vacant two-family house which currently exist on the property and are in a state of disrepair. (ROR, Item 34: Transcript, February 17, 1994, p. 10; Item 14: Memorandum from Elizabeth Stocker, Director of Community Development, to the CT Page 1493-HH Commission, January 14, 1994.) In addition, the Commission received a letter from a neighbor who wrote "[w]e are in favor of any construction that would replace the eyesore that is now on that property . . . . Mr. Edwards' building appears to be well designed and would certainly improve the neighborhood." (ROR, Item 12: Letter from Robert and Jane Cottingham to the Commission, February 17, 1994; Item 34: Transcript, February 17, 1994, p. 1.) Based on the foregoing evidence, the court finds that the Commission could have reasonably concluded that the proposed site development would not impair property values. (ROR, Item 34: Transcript, February 17, 1994, p. 10.)
Regulations, Sec. 8.04.750 states that "[t]he proposed use shall not create a health or safety hazard to persons or property on or off the lot on which the use is proposed." The record indicates that appropriate measures were considered in the formulation and eventual development of the site plans so as to prevent health and safety hazards. As noted previously, the Newtown Board of Fire Commissioners (ROR, Item 24); the Newtown Health Department (ROR, Item 18); and the Town Engineer (ROR, Item 20), reviewed the application. Additionally, Edwards assured CT Page 1493-II the Commission that, as an owner and potential developer, he would be responsible for any off-site damage from blasting and that the persons conducting the blasting would be insured and certified by the State of Connecticut. (ROR, Item 34: Transcript, February 17, 1994, p. 11.) The Commission also heard testimony from a neighboring property owner advising the Commission to allow easy access off Route 25 to prohibit vehicular accidents in that area. (ROR, Item 34: Transcript, February 17, 1994, p. 29.) The Commission also discussed and considered various ingress and egress routes from the site in the interest of safety. (ROR, Item 34: Transcript, February 17, 1994, pp. 17-20: Item 35: Transcript, March 17, 1994, pp. 2-4.)
Regulations, Sec. 8.04.760 provides that "[a]ll applicable sections of these regulations and all other applicable Town and State laws, ordinances, regulations or codes, including, without limitation, the Town Sanitary Code, Town Sand and Gravel Regulations, and State Health Code, shall be complied with." The applicable governmental bodies, including the Board of Fire Commissioners (ROR, Item 24); the Newtown Health Department (ROR, Item 17); the Town Engineer (ROR, Item 13); the Zoning Board of CT Page 1493-JJ Appeals (ROR, Item 15); the Conservation Commission (ROR, Item 16); and the Office of Community Development (ROR, Item 14), reviewed the application. In addition, Edwards entered into a Road and Drainage Work Agreement with the Town of Newtown. (ROR, Item 21.) That agreement specifically provides for road and drainage improvements to be made to Peck's Lane. In 1988, Edwards prepared and submitted a hydrological study for the Route 25 and Peck's Lane intersection. (ROR, Item 21.) In addition, the Commission heard testimony regarding drainage at the site and arrangements for a septic system. (ROR, Item 34: Transcript, February 17, 1994, pp. 14-16, 11-12.) The court finds that the record contains sufficient evidence from which the Commission could reasonably conclude that Edwards complied with applicable ordinances and codes.
Regulations, Sec. 8.04.780 states that "[c]onstruction proposed on the site shall be carried out so as to utilize the site in a manner which results in the least defacement of the natural features thereon, such as trees, rock outcroppings, etc." Edwards informed the Commission that the rock outcropping and the woodland area of the site, which is approximately 30 percent of CT Page 1493-KK the site, would remain undisturbed. (ROR, Item 34: Transcript, February 17, 1994, p. 11.)
On the basis of the foregoing, the Commission expressly found that the "[t]he application met the criteria for a special exception." (ROR, Item 3: Minutes of Commission Meeting, March 17, 1994, p. 3.) The Commission's determination was reasonably based on the evidence and testimony before it.
The Commission determined that the proposed use, one expressly permitted by the Newtown Planning and Zoning Regulations, satisfied the requirements of those Regulations as well as General Statutes, Sec. 8-2. The Commission's action in this matter was within its discretion and neither unreasonable nor arbitrary. Accordingly, the plaintiffs' appeal is dismissed.
Leheny, J.