SEYMOUR R. POWERS *v.* COMMON COUNCIL OF THE CITY OF DANBURY

KING, C. J., MURPHY, ALCORN, HOUSE and THIM, Js.

Argued June 8—decided July 26, 1966

*Abram W. Spiro,* for the appellant (plaintiff).

*George S. Sakellares,* for the appellee (defendant).

THIM, J. The plaintiff executed a contract to purchase property known as 134-136 Deer Hill Avenue in the city of Danbury for the purpose of erecting a high-rise apartment building on it. The property is in a professional office and apartment district, as defined in the zoning regulations of the city. Danbury Zoning Ordinance § 5 (1964). Section 3.17 of the Danbury zoning ordinance provides that any area in this district, "upon the recommendation of the City Planning Commission, may be designated by the Common Council, after a public hearing, as a multiple housing project area, to which the regulations provided in this ordinance for the district in which it is located shall continue to apply."

Pursuant to a request of the plaintiff, the city planning commission recommended to the defendant council that the property be designated as a multiple housing project area. Thereafter, the plaintiff applied to the council for such a designation. Following a public hearing, the council denied the application on the ground that the designation of the property as a multiple housing project area "would increase traffic on an already busy street where there are churches and schools in the neighborhood." Upon appeal, the trial judge sustained the action of the council, holding that where, after a hearing, it appears that the council has fairly exercised its judgment, the court should not substitute its discretion for the wide discretion enjoyed by the local zoning authority.

The plaintiff correctly contends that the zoning regulations contain no standards to guide the coun-

cil in passing on the plaintiff's application. For reasons hereinafter stated, however, this deficiency does not alter the ultimate outcome of the present case.

Danbury adopted zoning regulations pursuant to the provisions of chapter 124 of the General Statutes. Danbury Zoning Ordinance §§ 21.1, 23.1 (1964). Section 8-2 of the General Statutes, a part of chapter 124, states, among other things, that the zoning commission may divide a municipality into districts and provide uniform regulations for each district and that the regulations "may provide that certain classes or kinds of buildings, structures or use of land are permitted only after obtaining a special permit or special exception from . . . [the appropriately designated administrative body] subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values." Although the requirement of standards is specifically provided for in this statute, it should also be noted that such a requirement is a fundamental aspect of constitutional law. *Eastern Oil Refining Co.* v. *Court of Burgesses,* 130 Conn. 606, 611, 36 A.2d 586.

Section 5.1 of the zoning regulations states that, subject to the provisions of § 3.17, a multiple housing project is a permitted use in a professional office and apartment district. The effect of § 3.17, however, is that no property within the district may be put to that use unless the property is first recommended by the planning commission and designated by the council for that use. Neither the term "special exception" nor the term "special permit" is used in § 3.17. The nomenclature is immaterial so long as the effect is the same. *Huhta*

v. *Zoning Board of Appeals,* 151 Conn. 694, 696, 202 A.2d 139. We conclude that this area designation process is in effect a procedure for the granting of a special permit.[1]

When the council was considering the application for an area designation, it was acting administratively. See *McCormick* v. *Planning & Zoning Commission,* 146 Conn. 380, 382, 151 A.2d 347. The Danbury zoning regulations therefore must contain standards to guide the council when it acts on an application for a special permit. *Fox* v. *Zoning Board of Appeals,* 146 Conn. 665, 668, 154 A.2d 520. We find no such standards in the regulations.

Section 3.17 is devoid of standards to guide the council. Section 3.17.1 of the regulations provides no guide for the council to consider in passing on an area designation.[2] It deals with site plan approval by the planning commission rather than area designation. There is no requirement that the council approve, or indeed even consider, the site plan before it passes on an area designation application. Section 3.17.1 is therefore not a standard to guide the council, and we need not consider its sufficiency as such. The regulations themselves contain no standards which the council is to consider when it is acting on a recommendation of the planning commission. In the absence of such standards, the council may apply one or more of a great variety of matters which it may deem proper, or it may grant or refuse to make a designation solely

---

[1] The terms "special exception" and "special permit" hold the same legal import and can be used interchangeably. *Summ* v. *Zoning Commission,* 150 Conn. 79, 87, 186 A.2d 160.

[2] "[Danbury Zoning Ordinance § 3.17.1 (1964)] The site plan of such project shall be subject to the approval of the Planning Commission especially as to traffic access, safety and the adequacy of parking facilities."

on capricious grounds. Although § 8-2 of the General Statutes provides that the public health, safety, convenience and property values may be considered in making a determination on a special permit, this is to be done in conjunction with, and not as an alternative to, the standards which the zoning regulations themselves must provide. See *Summ* v. *Zoning Commission,* 150 Conn. 79, 91, 186 A.2d 160.

In the complete absence of standards, the power to grant a special permit, which is provided for in § 8-2 of the General Statutes, cannot be exercised. *Fox* v. *Zoning Board of Appeals,* supra, 668. The portion of the zoning regulations which allows a special permit without appropriate standards is void. 8 McQuillin, Municipal Corporations (3d Ed. Rev.) § 25.165, p. 533.

The effect of our decision is that a multiple housing project is not a permitted use in a professional office and apartment district. If the city wishes to provide for such projects in this district, it should either appropriately amend its zoning regulations or, after enacting the necessary regulations to provide standards, allow such projects by a special permit.

The trial court was correct when it dismissed the appeal. The appeal, however, should not have been dismissed for the reasons advanced by the trial judge. Simply because the trial judge relied on the wrong theory does not render the judgment erroneous. A correct decision can be sustained although it may have been placed on the wrong grounds. *Emerick* v. *Monaco & Sons Motor Sales, Inc.,* 145 Conn. 101, 106, 139 A.2d 156.

There is no error.

In this opinion the other judges concurred.