### A. AIUDI AND SONS, LLC *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF PLAINVILLE
### (AC 21291)

Lavery, C. J., and Schaller and West, Js.

Argued May 6—officially released September 24, 2002

*William Galske III*, for the appellant (plaintiff).

*Edward T. Lynch*, with whom, on the brief, was *Kenneth R. Slater, Jr.*, for the appellee (defendant).

*Opinion*

LAVERY, C. J. The plaintiff, A. Aiudi and Sons, LLC, appeals from the judgment of the trial court, which dismissed the plaintiff's appeal from the decision of the defendant, the planning and zoning commission of the town of Plainville (commission). At issue is the defendant's denial of the plaintiff's application to excavate sand and gravel from a residentially zoned parcel. Essentially, the plaintiff claims that its application was a site plan application and that the defendant had no discretion to deny the application because it satisfied the site plan requirements. We conclude that the plaintiff's application actually was a special permit application and that the defendant properly exercised its discretion in denying the application. We therefore affirm the judgment of the trial court.

The court set forth the following relevant facts in its memorandum of decision. On October 1, 1996, the plaintiff applied to the defendant for site approval to remove 90,000 to 95,000 cubic yards of sand and gravel from property that it owns on Camp Street in Plainville. The property is located in an R-11 zone, which is a residential zone, and lies between residential homes and a concrete plant owned by the plaintiff. Public hearings were held on November 12, 1996, and December 10, 1996. At the first public hearing, the plaintiff made a presentation regarding the area to be excavated, and area residents spoke in opposition to the project. At the second public hearing, attorney Gregory P. Granger intervened on behalf of some area residents, pursuant to General Statutes § 22a-19, and presented their opposition to the plaintiff's application. He also called four expert witnesses, who testified as to the negative effect that the proposed plan would have on the air quality,

noise, neighboring property values and the parcel's diminished future use for residential purposes.

Members of the defendant deliberated on the application at their January 14, 1997 meeting. Although three members voted in favor of the application with only one in opposition, the application failed because it did not receive the support of the majority of the six board members present. See *Merlo* v. *Planning & Zoning Commission*, 196 Conn. 676, 683, 495 A.2d 268 (1985) ("failure of an application to garner enough votes for its approval amounts to a rejection of the application").

On February 14, 1997, the plaintiff filed an appeal in Superior Court pursuant to General Statutes § 8-9, which was dismissed. Relying on *Friedman* v. *Planning & Zoning Commission*, 222 Conn. 262, 608 A.2d 1178 (1992), the court concluded that the defendant properly denied the application after taking into account general health and safety considerations because the town of Plainville's zoning regulations expressly permitted it to do so and gave the defendant the discretion to deny a site plan application.[1] As to the plaintiff's contention that there was little on the record to support the defendant's denial, the court searched the record and stated that it "establishes that the mining poses a serious health risk, violates existing noise pollution standards, depreciates property values and destroys the ability to use that residentially zoned prop-

[1] Section 603 of the Plainville zoning regulations provides in relevant part: "The Commission may approve, approve with conditions, modify or deny a Site Plan Application or Site Plan Modification. In approving such an application or approving it with conditions or approving it subject to modification, the Commission shall make a finding [sic] the proposed use . . . conform[s] to the following considerations and standards in addition to any additional requirements for specific uses included in these Regulations. . . .

"5. Character and Appearance. The character and appearance of the proposed use . . . shall be in general harmony with the character and appearance of the surrounding neighborhood and will not adversely affect the general health, safety or welfare of the inhabitants of the Town of Plainville."

erty for residential purposes." The court found that the evidence was sufficient to support the defendant's denial.

Following the court's denial of its motion to reargue, the plaintiff was granted certification to appeal and thereafter appealed to this court. It claims that the trial court improperly concluded that (1) general criteria in zoning regulations may serve as a basis to deny a site plan application, (2) the defendant's regulations permitted the defendant to deny the site plan application on the basis of such general criteria and (3) there was evidence in the record to support the defendant's decision. Additional facts will be provided as necessary.

Although the plaintiff argues that it filed a site plan application, we conclude that the plaintiff actually applied for, and was denied, a special permit. Our review leads us to conclude that the court improperly treated the plaintiff's application as one seeking site plan approval because the application was, in substance, an application for a special permit. Viewing the application as such, we conclude that the defendant acted within its discretion in denying the application. Accordingly, we affirm the judgment on the basis of one of the alternate grounds argued by the defendant because there is evidence in the record in support thereof. See *Delfino* v. *Planning & Zoning Commission*, 30 Conn. App. 454, 460, 620 A.2d 836 (1993). "Where a trial court reaches the correct result, but has based that result on mistaken grounds, we will sustain the trial court's action if proper grounds exist to support it." Id.

"A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations. . . . The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary

to protect the public health, safety, convenience and property values. . . . An application for a special permit seeks permission to vary the use of a particular piece of property from that for which it is zoned, without offending the uses permitted as of right in the particular zoning district. . . . When a special permit is issued, the affected property may be allowed an exception to the underlying zoning regulations, but it continues to be governed in the same manner as provided in the overall comprehensive plan." (Citations omitted; internal quotation marks omitted.) *Heithaus* v. *Planning & Zoning Commission*, 258 Conn. 205, 215–17, 779 A.2d 750 (2001).

"When ruling upon an application for a special permit, a planning and zoning board acts in an administrative capacity. . . . Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The [Appellate Court and] trial court [have] to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. . . . In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." (Citations omitted; internal quotation marks omitted.) *Irwin* v. *Planning & Zoning Commission*, 244 Conn. 619, 627–28, 711 A.2d 675 (1998). Furthermore, although "the zoning commission does not have discretion to deny a special permit when the *proposal meets the standards, it does have* discretion to determine *whether* the proposal meets the standards set forth in the regulations." (Emphasis in original.) Id., 628.

The plaintiff first argues that the court improperly concluded that general criteria in zoning regulations are proper bases to deny a site plan application. Because we conclude that the trial court improperly treated the plaintiff's application as one for a site plan application when it was, in fact, an application for special permit, we affirm the trial court's judgment on the basis of an alternate ground raised by the defendant. As a matter of law, general considerations enumerated in the zoning regulations are an adequate basis for denying an application for a special permit or exception. *Whisper Wind Development Corp.* v. *Planning & Zoning Commission*, 229 Conn. 176, 177, 640 A.2d 100 (1994). Here, § 502 of the defendant's regulations provides that general considerations such as "public health, safety, or general welfare to the public," "harmony and character with the surrounding properties," and "the value of adjacent properties," may be taken into account when considering a special permit. Accordingly, because the defendant had the discretion to deny the plaintiff's application based on general considerations, we must first explain how we reach our conclusion that the plaintiff applied for a special permit.

General Statutes § 8-2, which grants zoning commissions the authority to promulgate regulations provides in relevant part: "All such regulations shall be uniform for each class . . . or use of land throughout each district, but the regulations . . . may provide that certain . . . uses of land are permitted only after obtaining a special permit or special exception from a . . . combined planning and zoning commission . . . subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values. . . ."

The plaintiff's property is located in an R-11 zone, which is zoned for multifamily and single-family use. Not only is the removal of sand, gravel or clay not

permitted as of right in an R-11 zone,[2] § 900 of the zoning regulations provides in relevant part that "[e]xcept as otherwise provided for in this Article, there shall be no removal from the premises, in any district, of earth, sand, gravel or clay . . . ." Although the removal of sand, gravel or clay is not permitted as of right, the plaintiff applied for a two year permit pursuant to § 910.2. Section 910.2 provides in relevant part that "the [defendant] *may*, after a public hearing, subject to the provisions of Article 6, *grant a permit* for the removal of sand, gravel or clay in any zone . . . ." (Emphasis added.) Because the plaintiff was applying for a permit that is not allowed as of right in that zone, we conclude that it was applying for a special permit. The terms "special permit" and "special exception" are interchangeable. *A.P. & W. Holding Corp.* v. *Planning & Zoning Board*, 167 Conn. 182, 185, 355 A.2d 91 (1974); R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1999) § 5.1, p. 135. As a result, we conclude that the defendant could take into account the general considerations enumerated in the special exception regulations when examining the plaintiff's application.

Our conclusion that the defendant considered this to be an application for a special exception is further supported by the posture of the application process. Following the public hearing on its application, which

---

[2] Section 510 of the Plainville zoning regulations provides in relevant part: "Buildings and land may be used and buildings may be altered or erected to be used for the following purposes:

"1. [Dwellings for one family; farming, raising poultry, forestry, truck or nursery gardening; display of products, produce and nursery stock raised on the premises.]

"2. Condominium and multi-family developments. . . .

"3. A professional or personal business office conducted by a resident of the premises, provided that such use is secondary to the use of the premises for dwelling purposes and does not change the residential character thereof.

"4. Accessory uses customary to a permitted use.

"5. Signs . . . ."

is required by General Statutes § 8-26e for special exceptions, the defendant consented, in writing, to an extension of time for the public hearing and action on its application. That procedure was in accordance with § 501 of the defendant's regulations, which addresses special exceptions.

As previously discussed, § 910.2 provides that the defendant "may" grant a permit, and § 130.3 provides that "the word 'may' is permissive." When, as here, the zoning board is reviewing a special permit application for a use that theoretically is permitted in any zone, it must "determine whether the particular proposal is suitable for the particular zone." *Barberino Realty & Development Corp.* v. *Planning & Zoning Commission*, 222 Conn. 607, 616, 610 A.2d 1205 (1992).

Even if the defendant could not rely on the general considerations listed in the special exception regulations, it could have relied on the general considerations enumerated in the site plan regulations in article VI of the zoning regulations. When a site plan is an integral part of a special permit application, a planning and zoning commission may refer to special permit considerations when assessing the site plan. Id., 612. In this case, the reverse also is true. Section 910.2 of the gravel removal permit regulation provides that the defendant must take the provisions of article VI into consideration. Accordingly, the defendant properly referred to § 603, which provides in relevant part that "the [defendant] may approve, approve with conditions, modify *or deny* a Site Plan Application or Site Plan Modification" on the basis of general considerations. (Emphasis added.)

The plaintiff makes two arguments to support its claim that the defendant had before it only a request for approval of a site plan. First, the plaintiff argues that the defendant's consideration of special exceptions or permits is limited to the specifically delineated uses

listed in its regulations. Second, it argues implicitly that the consideration of the issue is barred by claim preclusion and issue preclusion. We disagree with both contentions.

Section 500 of the defendant's regulations specifically delineates uses that must be considered to be special exceptions permitted in any zone. Because that section does not include sand and gravel removal,[3] the plaintiff argues that the permit it sought is not subject to the rules regarding special exceptions. We disagree.

Although § 500 lists certain uses that "must" be considered to be special exceptions permitted in any zone, the regulation does not state that this list is exclusive. As previously discussed, a permit that is not allowed as a matter of right is a special permit, and the terms "special permit" and "special exception" are interchangeable. We are able to conclude that a party is applying for a special permit even where the zoning regulations do not refer specifically to that term of art, so long as that is what the party is applying for in

_____

[3] Section 500 of the Plainville zoning regulations provides: "The following uses are declared to possess such special characteristics that each must be considered as a special exception. They are permitted in any zone by the Plainville Town Planning and Zoning Commission, provided a public hearing is held and subject to the site plan provisions and guides to the Commission set forth in Article 6.

"1. Church
"2. Public or private school
"3. Library
"4. Public museum
"5. Public or private convalescent home
"6. Hospital or clinic
"7. Park or playground operated by a community association or nonprofit corporation located in the Town of Plainville, or by an employing corporation for the benefit of its employees or by a governmental unit.
"8. Public or private cemetery
"9. Town Hall, Police Station or Firehouse
"10. Public utility, building or facility
"11. Any other similar educational, religious, philanthropic, fraternal or governmental use."

substance. *Etzel* v. *Zoning Board of Appeals*, 155 Conn. 539, 540–41, 235 A.2d 647 (1967).

Although it did not invoke the terms specifically, the plaintiff also argues that the defendant's special permit argument is barred by claim preclusion and issue preclusion. In support, it cites to litigation resulting from the defendant's approval of a two year permit for the same purpose for the same property in 1993;[4] see *Granger* v. *Planning & Zoning Commission*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV93-0704362 S (March 11, 1994); and its counsel's presentation before the defendant that this permit was needed to complete the prior job.[5] Dismissing the neighbors' appeal from the granting of the 1993 permit, the court concluded that the project required only a site plan and was not subject to the rules of a special exception. Because we denied the neighbors'

[4] Indeed, the property and the adjacent concrete plant owned by the plaintiff have been the subject of continuous litigation between the plaintiff, the defendant and the plaintiff's neighbors. See *Granger* v. *A. Aiudi & Sons*, 60 Conn. App. 36, 758 A.2d 417 (appeal from trial court determination that plaintiff's concrete business not nuisance), cert. denied, 255 Conn. 902, 762 A.2d 908 (2000); *A. Aiudi & Sons, LLC* v. *Planning & Zoning Commission*, Superior Court, judicial district of New Britain, Docket No. CV97-483831 S (May 10, 2000) (appeal from denial of plaintiff's application for zoning change of property from residential to industrial); *Aiudi* v. *Planning & Zoning Commission*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV93-455059 S (January 14, 1994) (same); *Granger* v. *Planning & Zoning Commission*, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 43-70-38 (September 16, 1991) (appeal from denial of neighbors' notice of intervention and request for notice of meetings); *Granger* v. *Zoning Board of Appeals*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV89-363864 (November 29, 1990) (appeal from granting of height variance for construction of elevator).

[5] At its presentation to the defendant, the plaintiff stated that it sought a new permit because "almost a whole year went by [following the granting of the 1993 permit in which] the [plaintiff] could not work on the property because Mr. Granger had filed lawsuits," and that "[t]he old [permit] did not go any further than this [application] did, and this one does not go any further than that one did."

petition to certify that appeal on April 27, 1994, we address the issue for the first time here. It is well settled that a denial of certification by an appellate court does not signify approval of the decision from which certification to appeal is sought. See *Clarke* v. *Commissioner of Correction*, 249 Conn. 350, 358, 732 A.2d 754 (1999), citing *State* v. *Doscher*, 172 Conn. 592, 376 A.2d 359 (1977).

To the extent that the plaintiff argues that the defendant was estopped from denying its permit application because it granted a previous two year permit, we disagree. Otherwise, the two year limitation on the permit's validity in § 910.2 would be superfluous. We interpret the language of zoning regulations so that no clause is superfluous. See *Connecticut Resources Recovery Authority* v. *Planning & Zoning Commission*, 46 Conn. App. 566, 571, 700 A.2d 67, cert. denied, 243 Conn. 935, 702 A.2d 640 (1997).

Although the court found that the defendant properly exercised its discretion, it concluded that the defendant did not state a reason for its denial. As a result, the court, citing *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission*, 220 Conn. 527, 544, 600 A.2d 757 (1991), searched the record to see if there was a sufficient reason to uphold the defendant's decision. As a result, the court found that there was substantial evidence for the defendant to have rejected the plaintiff's application, particularly the testimony of the expert witnesses.

Although we agree with the court's conclusion as to the sufficiency of the evidence, its search of the record to find a sufficient reason for the defendant's denial was improper. General Statutes § 8-3c (b) provides in relevant part that "[w]henever a commission grants or denies a special permit or special exception, it shall

state upon its records the reason for its decision. . . ."[6]
See also General Statutes § 8-26e (same); *Anastasi* v.
*Zoning Commission*, 163 Conn. 187, 191, 302 A.2d 258
(1972) (affirming trial court's sustaining of plaintiff's
appeal where defendant "did not state on the record
sufficient reasons to support the granting of the [special
exception]"); R. Fuller, 9A Connecticut Practice Series:
Land Use Law and Practice (2d Ed. 1999) § 33.4, p. 161.
Even though the untethered search of the record was
improper, the commission did state a reason for its
denial. The lone dissenting member stated that although
he recognized that the prior permit was approved, "I
don't feel that this application is the same as the applica-
tion of 1993, and I feel that we have to go according
to the new regulations that are in effect, and that's
my only reason." Although we recently restated that
"[e]vidence of the individual views of one member [of
the planning and zoning commission] is not available
to show the reasons actuating the [commission] or the
grounds of its decision"; (internal quotation marks omit-
ted) *Grasso* v. *Zoning Board of Appeals*, 69 Conn. App.
230, 237, 794 A.2d 1016 (2002); that general proposition
is inapplicable here, where the stated views are of those
of the sole individual responsible for the denial of the
application. Following our review of the stated reasons,
we conclude that there is evidence in the record to
support the defendant's stated reasons.

"In situations in which the zoning commission does
state the reasons for its action, the question for the
court to pass on is simply whether the reasons assigned

---

[6] The defendant also would be required to provide a reason on the record
if it had before it only a site plan review. General Statutes § 8-3 (g) provides
in relevant part that "[a] decision to deny or modify a site plan shall set
forth the reasons for such denial or modification. . . ." Accordingly, even
if we were to agree with the plaintiff that the defendant had before it only
the approval of a site plan, we would disagree with the plaintiff's contention
that the defendant did not provide a reason for rejecting the application for
the reasons previously discussed.

are reasonably supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the zoning regulations. . . . [O]n factual questions . . . a reviewing court cannot substitute its judgment for that of the agency. . . . If there is conflicting evidence in support of the zoning commission's stated rationale, the reviewing court . . . cannot substitute its judgment as to the weight of the evidence for that of the commission. . . . The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." (Citations omitted; internal quotation marks omitted.) *Irwin* v. *Planning & Zoning Commission*, supra, 244 Conn. 629. The evidence, however, must be substantial. See *Quality Sand & Gravel, Inc.* v. *Planning & Zoning Commission*, 55 Conn. App. 533, 540, 738 A.2d 1157 (1999), citing *Huck* v. *Inland Wetlands & Watercourses Agency*, 203 Conn. 525, 540, 525 A.2d 940 (1987).

We conclude that there was substantial evidence to support the defendant's stated reason that § 603, which replaced § 620 in the time between the plaintiff's first and second permit applications, expressly required the defendant to take general circumstances into account. Granger testified at the December 10, 1996 hearing as to the changes between sections 603 and 620 and how the project would not fit in with the general considerations enumerated in § 603. Similarly, each of the four expert witnesses testified as to the project's effect on air quality, noise, neighboring property values and the parcel's diminished future use for residential purposes. The defendant also had before it a letter dated January 9, 1997 from Mary Hughes, the town planner, which stated that "Section 603 is more explicit than Section 620. Section 603 includes a specific requirement for a finding that the character and appearance of the proposed use shall be in general harmony with the charac-

ter and appearance of the surrounding neighborhood and that it will not adversely affect the general health, safety or welfare of the inhabitants of the Town of Plainville." Accordingly, we conclude that there is substantial evidence to support the defendant's action. Cf. *Anastasi* v. *Zoning Commission*, supra, 163 Conn. 189–90.

The plaintiff would fare no better even if we were to agree that the defendant had before it only a site plan review. Just as a zoning commission may exercise its discretion to deny a special permit application on the basis of general conditions if those conditions are enumerated in the zoning regulations; see *Whisper Wind Development Corp.* v. *Planning & Zoning Commission*, supra, 229 Conn. 177; it also has the discretion to deny a site plan on the basis of general conditions if site plan denial is specified in the regulations. General Statutes § 8-3 (g) provides in relevant part: "The zoning regulations may require that a site plan be filed with the commission or other municipal agency or official to aid in determining the conformity of a proposed . . . use . . . with specific provisions of such regulations. . . . A site plan may be modified or *denied* only if it fails to comply with requirements already set forth in the zoning . . . regulations. . . ." (Emphasis added.) As previously discussed, § 603 of the zoning regulations provides that the defendant may deny a site plan application and specifies: "5. . . . The character and appearance of the proposed use . . . shall be in general harmony with the character and appearance of the surrounding neighborhood and will not adversely affect the general health, safety or welfare of the inhabitants of the Town of Plainville."

Accordingly, we conclude that the defendant properly could deny the site plan on the basis of general considerations. See, e.g., *Friedman* v. *Planning & Zoning Commission*, supra, 222 Conn. 266–68 (traffic con-

siderations proper basis for denying site plan where regulations required to be satisfied for "approval," which implies denial); cf. *TLC Development, Inc.* v. *Planning & Zoning Commission,* 215 Conn. 527, 532, 577 A.2d 288 (1990) (general considerations improper basis for denying site plan where regulations specify they may be used only for "modification"). We further conclude, for the reasons previously discussed, that the defendant did not abuse its discretion

The judgment is affirmed.

In this opinion the other judges concurred.