## A. AIUDI AND SONS, LLC *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF PLAINVILLE
### (SC 16879)

Borden, Norcott, Katz, Palmer and Zarella, Js.

Argued September 12, 2003—officially released January 6, 2004

*Peter J. Zagorsky*, for the appellant (plaintiff).

*Edward T. Lynch, Jr.*, with whom was *Jared Cohane*, for the appellee (defendant).

*Opinion*

ZARELLA, J. In this certified appeal, we must determine whether the Appellate Court properly affirmed the trial court's dismissal of the plaintiff's appeal from the decision of the defendant, the planning and zoning commission of the town of Plainville (commission), to deny the plaintiff's application for the removal of sand and gravel from its property. We conclude that it did and, accordingly, affirm the judgment of the Appellate Court.

The following facts and procedural history are relevant to this appeal. On October 1, 1996, the plaintiff, A. Aiudi and Sons, LLC, filed an application with the commission for the removal of approximately 95,000 cubic yards of sand and gravel from its property in Plainville. The plaintiff's property is located in a residential zone and is situated between a residential neighbor-

hood and a concrete plant utilized by the plaintiff. The commission held two public hearings in connection with the plaintiff's application during which it received testimony regarding the potential impact of the plaintiff's proposed activity from experts and owners of property abutting the plaintiff's property.

At the November, 1996 hearing, the plaintiff offered a brief overview of the area it sought to excavate but presented no other evidence in support of its application. At the December, 1996 hearing, Gregory Granger, an attorney appearing on behalf of the abutting property owners, objected to the plaintiff's application pursuant to General Statutes § 22a-19.[1] Granger presented four expert witnesses, all of whom testified about the negative impact that the plaintiff's proposed excavation posed to neighboring properties.

Thereafter, the commission denied the plaintiff's application,[2] and the plaintiff appealed to the trial court. Construing the plaintiff's application as an application for site plan approval, the trial court upheld the commission's decision to deny the plaintiff's application and dismissed the plaintiff's appeal. The trial court con-

[1] General Statutes § 22a-19 provides in relevant part: "(a) In any administrative . . . proceeding . . . any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding . . . involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state.

"(b) In any administrative . . . proceeding, the agency shall consider the alleged unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resources of the state and no conduct shall be authorized or approved which does, or is reasonably likely to, have such effect so long as, considering all relevant surrounding circumstances and factors, there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare."

[2] Although three of the six commission members voted to approve the plaintiff's application, one member voted to deny the application, thereby preventing approval due to the lack of necessary majority votes.

cluded that the rule announced in *Friedman* v. *Planning & Zoning Commission*, 222 Conn. 262, 265–66, 608 A.2d 1178 (1992), authorizes a zoning commission to take into account general considerations of health, safety and welfare of the community in denying a site plan application when the applicable regulations so permit. The trial court further concluded that, because the applicable town zoning regulations expressly authorize the commission to deny an application on the basis of these "general considerations," the commission properly considered, inter alia, the health and safety of the community in denying the plaintiff's application.[3]

On the granting of certification, the plaintiff appealed from the judgment of the trial court to the Appellate Court. The Appellate Court affirmed the trial court's judgment, concluding that, even though the plaintiff had filed its application as an application for site plan approval, the application, "in substance," qualified as one for a special exception rather than site plan approval.[4] *A. Aiudi & Sons, LLC* v. *Planning & Zoning Commission*, 72 Conn. App. 502, 505, 516, 806 A.2d 77 (2002). The Appellate Court noted that, even if it were to accept the plaintiff's characterization of its application as one for site plan approval, General Statutes § 8-3 (g)[5] and the applicable regulations authorized the

---

[3] The trial court also rejected the plaintiff's other claim, namely, that the commission's decision to deny the plaintiff's application should have been reversed on the basis of the alleged absence in the record of any explanation by the commission for its decision. The court reviewed the record and determined that a sufficient basis had existed to uphold the commission's decision to deny the plaintiff's application.

[4] The Appellate Court noted, and we have recognized, that courts use the terms "special exception" and "special permit" interchangeably. *A. Aiudi & Sons, LLC* v. *Planning & Zoning Commission*, supra, 72 Conn. App. 508; see also *A.P. & W. Holding Corp.* v. *Planning & Zoning Board*, 167 Conn. 182, 185, 355 A.2d 91 (1974).

[5] General Statutes § 8-3 (g) provides in relevant part: "The zoning regulations may require that a site plan be filed with the commission . . . to aid in determining the conformity of a proposed . . . use . . . with specific provisions of such regulations. . . . A site plan may be modified or denied

commission to deny the plaintiff's application on the basis of considerations of public health, safety and welfare. Id., 515. This appeal followed.

We granted the plaintiff's petition for certification to appeal limited to the following issues: First, "[d]id the Appellate Court properly hold that the plaintiff's site plan application was actually an application for [a] special exception?" *A. Aiudi & Sons, LLC* v. *Planning & Zoning Commission*, 262 Conn. 919, 812 A.2d 861 (2002). Second, "[d]id the Appellate Court properly determine that if the application was seeking site plan approval, general criteria in the zoning regulations could serve as a basis for denial?" Id. We conclude that the Appellate Court properly determined that the plaintiff's application was, "in substance," one for a special exception and, therefore, need not reach the second certified issue.

The plaintiff claims that the Appellate Court improperly concluded that its application qualified as an application for a special exception. The plaintiff submits that the language of § 910 (2) of the regulations of the town of Plainville requires the issuance of a permit for the plaintiff's proposed activity and not a special permit or special exception. The plaintiff contends, therefore, that its application does not qualify as an application for a special exception but, rather, as an application for site plan approval. According to the plaintiff, the classification of its application as one for site plan approval rather than one for a special exception means that § 8-3 (g), rather than General Statutes § 8-2 (a),[6]

only if it fails to comply with requirements already set forth in the zoning . . . regulations. . . ."

[6] General Statutes § 8-2 (a) provides in relevant part: "The zoning commission of each . . . town . . . is authorized to regulate, within the limits of such municipality, the . . . use of buildings, structures and land for trade, industry, residence or other purposes . . . . Such zoning commission may divide the municipality into districts . . . and . . . may regulate the . . . use of buildings or structures and the use of land. All such regulations . . . may provide that certain . . . uses of land are permitted only after obtaining

applies. In support of its claim that the commission improperly denied its application on the basis of general considerations of public health, safety and welfare, the plaintiff relies on *Kosinski* v. *Lawlor*, 177 Conn. 420, 423, 418 A.2d 66 (1979). We disagree with the plaintiff that its application was merely one for site plan approval and conclude that the application qualifies as an application for a special exception, thereby implicating the provisions of § 8-2 (a) rather than § 8-3 (g).

We begin by noting our standard of review when interpreting statutes as well as regulations. "Statutory construction . . . presents a question of law over which our review is plenary." (Internal quotation marks omitted.) *Morrison* v. *Parker*, 261 Conn. 545, 548, 804 A.2d 777 (2002), quoting *Tighe* v. *Berlin*, 259 Conn. 83, 89, 788 A.2d 40 (2002). Such plenary review also applies to questions of law relating to the interpretation of regulations. *Wood* v. *Zoning Board of Appeals*, 258 Conn. 691, 698, 784 A.2d 354 (2001).

When the provisions of a zoning regulation contain requirements or procedures mirroring those found in special exceptions, we have held that an application qualifies as an application for a special exception in substance even though the regulation does not identify or label the application as one for a "special exception."

a special permit or special exception from a zoning commission, planning commission . . . [or] combined planning and zoning commission . . . subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values. . . . Such regulations shall be designed to lessen congestion in the streets; to secure safety from fire, panic, flood and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality. . . ."

*Etzel* v. *Zoning Board of Appeals*, 155 Conn. 539, 540–41, 235 A.2d 647 (1967); *Powers* v. *Common Council*, 154 Conn. 156, 159–60, 222 A.2d 337 (1966); see also *Huhta* v. *Zoning Board of Appeals*, 151 Conn. 694, 696, 202 A.2d 139 (1964) ("[w]hether or not . . . [the] term [special exception] is used in the particular zoning regulations is not material"). In *Etzel* v. *Zoning Board of Appeals*, supra, 155 Conn. 539, the trial court dismissed the appeal of the plaintiff, Johanna Etzel, who owned land in a "light industrial" zone in North Haven, from the decision of the defendant zoning board of appeals denying her application for a certificate of approval for the erection of an automotive service station. Id., 540. Etzel thereafter appealed to this court. Id. We noted that, pursuant to the applicable zoning regulations, "automobile service stations are a permitted use in . . . a [light industrial] zone, but no permit for the construction of an automobile service station may be issued until the proposed location has been approved as suitable by the zoning board of appeals and, following such approval, certain designated physical aspects of the layout have been approved by the planning and zoning commission." Id. Accordingly, we held that "[t]he zoning regulations . . . place an automobile service station in the category of a special exception." Id. We discounted the fact that the applicable regulation did not employ the term "special exception" and noted that the absence of that term from the regulations was "of no consequence"; id., 541; because "[t]he language of the section ma[de] clear that no permit for the construction of an automobile service station [was] to be issued until the special conditions pertaining to that use of the land ha[d] been satisfied." Id.

We reached a similar conclusion in *Powers* v. *Common Council*, supra, 154 Conn. 156, in which the plaintiff, Seymour R. Powers, appealed from the trial court's dismissal of his appeal from the defendant common

council's denial of his application for the designation of land as a multiple housing project area. Id., 158. The city of Danbury had enacted a zoning ordinance that provided that "subject to the provisions of [Danbury Zoning Ordinance] § 3.17, a multiple housing project is a permitted use in a professional office and apartment district. The effect of § 3.17, however, is that no property within the district may be put to that use unless the property is first recommended by the planning commission and designated by the council for that use." Id., 159. In *Powers*, we noted, as we did in *Etzel*, that the applicable ordinance did not use the term "special exception" or the term "special permit." Id. Nonetheless, we concluded that "[t]he nomenclature is immaterial so long as the effect is the same"; id.; and held that "this area designation process [was] in effect a procedure for the granting of a special permit." Id., 160; see also *Heithaus* v. *Planning & Zoning Commission*, 258 Conn. 205, 220, 779 A.2d 750 (2001).

Similarly, in the present case, we are not constrained by the use or lack of use of the term "special exception" or the term "special permit" in determining the effect of the particular regulations at issue. Rather, we examine these regulations, focusing on their requirements and procedures. With this principle in mind, we next turn to the applicable regulatory scheme and the plaintiff's claim.

Article 9 of the zoning regulations of the town of Plainville governs the removal of, inter alia, sand and gravel. Section 900 of the regulations provides in relevant part: *"Except as otherwise provided for in . . . Article [9], there shall be no removal from the premises, in any district,* of earth, sand, gravel or clay except as surplus material, resulting from bona fide construction. A bona fide construction site shall retain upon completion, a minimum of four . . . inches of topsoil in areas to be either seeded, planted with trees, shrubbery or

cultivated." (Emphasis added.) Plainville Zoning Regs., art. 9, § 900 (1989). Accordingly, the removal of sand and gravel in any district in the town is expressly prohibited unless such removal occurs in conjunction with bona fide construction or falls within an exception otherwise provided in article 9 of the regulations.

Section 910 outlines the only exceptions to the prohibition enunciated in § 900. See generally id., § 910. Subsection (2) of § 910[7] authorizes the commission, in its discretion,[8] to "grant a permit for the removal of sand,

[7] Subsection (2) of § 910 provides in relevant part: "The Planning and Zoning Commission may, after a public hearing, subject to the provisions of Article 6, grant a permit for the removal of sand, gravel or clay in any zone, under the following conditions:

"a. The applicant shall submit a plan showing existing grades in the area from which the above material is to be removed, together with finishing grades at the conclusion of the operation.

"b. The plan shall provide for proper drainage of the area of the operation after completion and no bank shall exceed a slope of one . . . foot of vertical rise in two . . . feet of horizontal distance, except in the case of ledge rock. No removal shall take place within 20 feet of a property line.

"c. At the conclusion of the operation, or of any substantial portion thereof, the whole area where removal takes place shall be covered with not less than four . . . inches of top soil and either seeded, planted with trees, shrubbery or cultivated. This requirement may be modified or waived, in part or in full, when, in the judgment of the Planning and Zoning Commission, no practicable purpose is accomplished by adherence thereto where land is beyond redemption or cultivation.

"d. Except in a General Industrial or Quarry Industrial Zone, no stone crushers or other machinery not required for actual removal of the material shall be used.

"e. Before a permit is granted under this section, the applicant shall post a bond with the Planning and Zoning Commission, or its designated agent, in an amount approved by the Planning and Zoning Commission as sufficient to guarantee conformity with the provisions of the permit issued hereunder.

"f. Such permits shall be issued for a period not to exceed 2 years." Plainville Zoning Regs., art. 9, § 910 (2) (1989).

[8] The regulations provide that the commission "*may*, after a public hearing, subject to the provisions of Article 6, grant a permit for the removal of sand, gravel or clay in any zone . . . [provided certain conditions are met]." (Emphasis added.) Plainville Zoning Regs., art. 9, § 910 (2) (1989). Because the regulations define "may" as "permissive"; id., art. 1, § 130 (3); the granting of such a permit falls within the commission's discretion.

gravel or clay in any zone . . . ." Id., § 910 (2). Section 910 (2) nevertheless contains numerous conditions to the granting of such a permit, including a public hearing on the proposed removal, the applicant's satisfaction of the requirements contained in article 6 of the regulations, and the fulfillment of certain conditions enumerated in § 910 (2).[9] Id. Thus, § 910 (2) serves as the lone gateway to the approval of an application for the removal of sand and gravel from a property located within the town when such removal will not be performed in conjunction with bona fide construction. See id.

As § 910 (2) instructs that an applicant must satisfy the requirements and conditions enumerated in article 6,[10] we examine that article and find that it reveals a host of submission requirements and other standards and considerations. Id., art. 6, §§ 600 through 603. Section 603,[11] in particular, details the general considera-

---

[9] The six conditions enumerated in § 910 (2) are not relevant to this appeal. See footnote 7 of this opinion for the full text of § 910 (2).

[10] Article 6 of the regulations, which is entitled, "SITE PLAN REQUIRE-MENTS," contains four sections, although only § 603 is relevant to this appeal. See generally Plainville Zoning Regs., art. 6, §§ 600 through 603 (1989).

[11] Section 603 of the zoning regulations provides in relevant part: "The Commission may approve, approve with conditions, modify or deny a Site Plan Application or Site Plan Modification. In approving such an application or approving it with conditions or approving it subject to modification, the Commission shall make a finding [that] the proposed use and proposed buildings and structures conform to the following considerations and standards in addition to any additional requirements for specific uses included in these Regulations. The Commission may modify the Site Plan Application or any revision thereto and/or attach conditions to an approval for such an application if such modification or conditions are necessary to achieve the objectives of this Regulation.

"1. Traffic Access. All proposed access to the site accommodates two way traffic entering and exiting the site, except as modified by Section 504, Drive Through Windows for Banks, Financial Institutions, Retail Stores and Restaurants, of the Regulations. The number of site access drives is adequate to accommodate the traffic generated by the proposed development. Site access drives are designed to safely accommodate existing traffic and traffic generated by the proposed development. Site access drives are properly

tions and standards for site plans. Id., art. 6, § 603. That section provides in relevant part: "The Commission may approve, approve with conditions, modify *or deny* a Site Plan Application or Site Plan Modification. In approving such an application or approving it with conditions or approving it subject to modification, the Commission *shall* make a finding [that] the proposed use . . . *conform[s] to the following considerations and standards* in addition to any additional requirements for specific uses included in these Regulations. . . ." (Emphasis added.) Id. The considerations and standards listed thereafter describe criteria relating to traffic access, circulation and parking, landscaping and screening, illumination, and the character and appearance of, inter

---

aligned and provide adequate site distance for the motorists and pedestrians. All of the proposed curb cuts are not located too near intersections, street corners, places of public assembly and other similar safety considerations.

"2. Circulation and Parking. Adequate off-street parking and loading areas are provided to prevent patrons, visitors and/or employees of a particular use from parking in public streets. Adequate, safe and accessible pedestrian circulation is provided to and within the site. Interior pedestrian and vehicular traffic circulation systems are designed to minimize conflicts between these two types of traffic and to provide safe access to and from buildings, structures and off-street parking areas. Loading areas are designed and located to prevent conflicts with pedestrian traffic.

"3. Landscaping and Screening. All parking areas, service delivery areas, outside storage of goods and materials associated with the primary use of the property shall be properly and reasonably screened with a combination of trees, indigenous to the region, shrubs, earthen berms, fences and/or other plant materials throughout the yea[r]. The view shall be screened from adjacent lots and streets and the visual screen shall be in character with the surrounding neighborhood. The preservation of existing trees over five inches in diameter . . . shall be encouraged by the Commission.

"4. Illumination. Outdoor illumination of a building, structure, parking area or any other portion of a lot must be properly shielded and directed in such a manner as not to adversely affect abutting properties or public or private streets.

"5. Character and Appearance. The character and appearance of the proposed use, building, parking and loading areas, outside storage areas, signs, landscaping and external illumination shall be in general harmony with the character and appearance of the surrounding neighborhood and will not adversely affect the general health, safety or welfare of the inhabitants of the [t]own of Plainville." Plainville Zoning Regs., art. 6, § 603 (1989).

alia, the proposed use. Id., § 603 (1) through (5). In particular, subsection (5) of § 603 provides in relevant part that "[t]he character and appearance of the proposed use . . . shall be in general harmony with the character and appearance of the surrounding neighborhood and will not adversely affect the general health, safety or welfare of the inhabitants of the [t]own . . . ." Id., § 603 (5).

Even though the plaintiff had submitted its application as one for site plan approval pursuant to § 910 (2) and, by incorporation, § 603 of the regulations, the Appellate Court concluded that, "[b]ecause the plaintiff was applying for a permit that is not allowed as of right in th[e] zone [in which the property was situated]," the plaintiff's application qualified as one for a special exception. *A. Aiudi & Sons, LLC* v. *Planning & Zoning Commission,* supra, 72 Conn. App. 508. In support of its conclusion, the Appellate Court noted that "the posture of the application process [in the present case]"; id.; resembled that of the process followed by the commission in considering applications for special exceptions. See id., 508–509.

We note, as did the Appellate Court, that the regulations governing the plaintiff's application parallel those that generally govern applications for special exceptions. See id. We previously have observed that "[a] special [exception] allows a property owner to use his property in a manner *expressly permitted* by the local zoning regulations." (Emphasis added; internal quotation marks omitted.) *Heithaus* v. *Planning & Zoning Commission,* supra, 258 Conn. 215. Nevertheless, special exceptions, although "expressly permitted" by local regulations, "must satisfy [certain conditions and] standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience and property values [as required by § 8-2]." (Internal quotation marks omitted.)

Id., 215–16. Moreover, we have noted that the "nature [of special exceptions] is such that their precise location and mode of operation must be regulated because of the topography, traffic problems, neighboring uses, etc., of the site." (Internal quotation marks omitted.) *Barberino Realty & Development Corp.* v. *Planning & Zoning Commission*, 222 Conn. 607, 612, 610 A.2d 1205 (1992). We also have recognized that, "if not properly planned for, [such uses] might undermine the residential character of the neighborhood." (Internal quotation marks omitted.) Id., 612–13. Thus, we have explained that the goal of an application for a special exception is to seek "permission to vary the use of a particular piece of property from that for which it is zoned, without offending the uses permitted as of right in the particular zoning district." *Heithaus* v. *Planning & Zoning Commission*, supra, 216.

In the present case, § 910 (2) of the regulations explicitly allows the plaintiff's proposed use, namely, the removal of sand and gravel from its property, but subjects such removal to numerous conditions and standards. See Plainville Zoning Regs., art. 9, § 910 (2) (1989). Accordingly, this regulatory scheme bears resemblance to those regulatory schemes that define and govern special exceptions. See *Heithaus* v. *Planning & Zoning Commission*, supra, 258 Conn. 215–16. Moreover, as with the regulation of other special exceptions, § 910 (2) serves to minimize the adverse impact that the removal of sand and gravel might have on the surrounding neighborhood and to safeguard permitted uses in that neighborhood.

The cumulative effect of these overlapping qualities, coupled with our holdings in *Etzel* and *Powers*, leads us to conclude that the plaintiff's application qualifies as an application for a special exception even though § 910 (2) uses the term "permit" rather than "special

exception" or "special permit."[12] Plainville Zoning Regs., art. 9, § 910 (2) (1989). Because we conclude that the plaintiff applied for a special exception, we now turn to the relevant statutory and regulatory provisions that govern special exceptions.

General Statutes § 8-2 (a)[13] authorizes municipal zoning commissions to enact regulations providing that "certain . . . uses of land are permitted only after obtaining a special permit or special exception from a zoning commission . . . ." General Statutes § 8-2 (a) further provides that the "obtaining [of] a special permit or special exception . . . [is] subject to standards set

[12] We note that the plaintiff's application does not qualify as a site plan application, as the trial court determined, and as the plaintiff maintains, inasmuch as § 910 (2) requires an applicant seeking to excavate, inter alia, sand or gravel to obtain *both* a permit and site plan approval. See Plainville Zoning Regs., art. 9, § 910 (2) (1989). If we were to accept the plaintiff's interpretation, we effectively would read the "permit" requirement out of the regulation. This we decline to do. See *Planning & Zoning Commission* v. *Gilbert*, 208 Conn. 696, 705, 546 A.2d 823 (1988) ("[w]henever possible, the language of zoning regulations will be construed so that no clause is deemed superfluous, void or insignificant").

Similarly, the plaintiff's application does not qualify as an application for a variance because § 900 does not completely bar the removal of sand and gravel when such removal is unrelated to bona fide construction. E.g., *Burlington* v. *Jencik*, 168 Conn. 506, 508, 362 A.2d 1338 (1975) ("[a] variance is authority extended to the owner to use his property in a manner forbidden by the zoning enactment"); see Plainville Zoning Regs., art. 9, § 900 (1989). Rather, § 900, in using the phrase, "[e]xcept as otherwise provided for in this Article," permits such removal subject to the conditions set forth in § 910 (2). Plainville Zoning Regs., art. 9, § 900 (1989); see also id., § 910 (2) (enumerating conditions that must be satisfied to obtain permit for removal of, inter alia, sand and gravel). We noted the distinction between special exceptions and variances in *Parish of St. Andrew's Church* v. *Zoning Board of Appeals*, 155 Conn. 350, 232 A.2d 916 (1967), in which we stated: "A special exception . . . allows an owner to put his property to a use which is expressly permitted under the regulations, in contradistinction to the grant of a variance, for instance, wherein the zoning board has the power to extend to the owner a right to use his property in a manner forbidden by the zoning enactment and need not depend upon express authorization in the zoning enactment." Id., 353.

[13] See footnote 6 of this opinion for the relevant text of § 8-2 (a).

forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values." Thus, in accordance with § 8-2 (a), an applicant's "obtaining" of a special exception pursuant to a zoning regulation is subject to a zoning commission's consideration of these general factors. Cf. *Willimantic Car Wash, Inc.* v. *Zoning Board of Appeals*, 247 Conn. 732, 738–39, 724 A.2d 1108 (1999) ("the gist of [§ 8-2] . . . is that zoning regulations must promote the public welfare").

Pursuant to its authority under § 8-2 (a), the commission adopted § 502 of article 5 of the regulations,[14] enti-

---

[14] Section 502 of the regulations provides in relevant part: " Special Exception Uses are declared to possess such special characteristics that each Special Exception shall be considered on an individual basis. In approving a Special Exception or approving it with conditions or approving it subject to modification, the Commission shall make a finding [that] the proposed use and proposed buildings and structures conform to the following considerations and standards in addition to any additional requirements for specific uses included in these Regulations. The Commission may modify the Special Exception and/or attach conditions to an approval for a Special Exception if such modification or conditions are necessary to achieve the objectives of this Regulation.

"A. The nature of the proposed use and its location does [sic] not impair public health, safety or the general welfare to the public. The proposed use and its location is [sic] consistent with orderly development of the [t]own and conforms to the requirements of these Regulations.

"B. The proposed use and proposed buildings and structures are in harmony and character with the surrounding properties and area and do not hinder or discourage the development and use of adjacent properties.

"C. The proposed use and proposed buildings and structures do not impair the value of adjacent properties.

"D. The nature and location of any proposed buildings and structures shall not impede access to the site and/or access for emergency response vehicles including but not limited to ambulances and fire apparatus.

"E. Local streets serving the proposed use are of adequate condition to carry traffic generated by the proposed use. Provisions shall be made for vehicular traffic to enter and exit the site which do not create an undue traffic hazard and/or cause undue traffic congestion. All access points shall accommodate two way traffic entering and exiting the site.

"F. The lot, on which the proposed use is located and the proposed buildings, structures and parking area are situated, is of sufficient size and adequate dimension to permit the normal operation of the use in [a] manner

tled, "GENERAL CONSIDERATIONS AND STAN-DARDS FOR SPECIAL EXCEPTIONS." Plainville Zoning Regs., art. 5, § 502 (1995). Section 502 mandates, for any type of approval, that the commission find that the proposed use complies with twelve standards enumerated therein. Id. Subsections (A) and (B) of § 502 require that: (1) "[t]he nature of the proposed use and its location [*do*] *not impair public health, safety or the general welfare* [*of*] *the public* . . . [and that they are] consistent with [the] orderly development of the [t]own and [conform] to the requirements of [the] Regulations"; (emphasis added) id., § 502 (A); and (2) "[t]he proposed use and proposed buildings and structures

which is not detrimental to the surrounding area and/or adjacent properties and consistent with the zoning district.

"G. The property and proposed parking areas shall be suitably landscaped with a combination of trees, shrubs and other plant materials to filter and screen the view of the proposed development from the surrounding area and adjacent properties and enhance the appearance of the proposed development. The Commission may require as a condition of approval a Performance Bond to assure the completion of any public improvements.

"H. Any proposed public improvements shall comply to [sic] the applicable [t]own, [s]tate or [f]ederal Regulations, Requirements, Standards or Guidelines. The Commission may require as a condition of approval a Performance Bond to assure the completion of any public improvements.

"I. The proposed buildings, structures and signs shall be sized, designed and situated to be in character and harmony with the surrounding area and adjacent properties.

"J. The proposed use and proposed buildings and structures are consistent with the policies, goals and objectives of the [t]own Plan of Development.

"K. The Commission shall find that the location and size of any use located in or adjacent to a residential zone, the nature and intensity of the operations of such use, the site layout and design of the proposed buildings and structures associated with the proposed use, vehicular access to and from the site and any proposed exterior illumination are compatible and consistent with the development and use of the neighborhood and adjacent properties, do not create a conflict with or impede the normal traffic on local roads or within the neighborhood and do not hinder or discourage the orderly and appropriate development and/or use of adjacent property and buildings.

"L. The proposed use, proposed buildings and structures and other site features are designed and maintained in such a manner as not to impose an unacceptable risk to aquifers and public water supplies." Plainville Zoning Regs., art. 5, § 502 (1995).

*are in harmony and character with the surrounding properties and area* and do not hinder or discourage the development and use of adjacent properties." (Emphasis added.) Id., § 502 (B). It follows, therefore, that when the commission determines that a use proposed in connection with an application for a special exception fails to satisfy one of the foregoing standards or other standards enumerated in § 502, it may deny the application. See id., § 502; see also *Irwin* v. *Planning & Zoning Commission,* 244 Conn. 619, 627, 711 A.2d 675 (1998) ("general considerations such as public health, safety and welfare, which are enumerated in zoning regulations, may be the basis for the denial of a special permit"); *Whisper Wind Development Corp.* v. *Planning & Zoning Commission,* 229 Conn. 176, 177, 640 A.2d 100 (1994) ("in the case of a special permit, zoning regulations may authorize a planning and zoning commission to deny an application on the basis of enumerated general considerations such as public health, safety and welfare").

Therefore, because we have determined that the plaintiff's application qualifies as one for a special exception, and because § 502 of the regulations, which sets forth the standards for special exceptions, expressly requires that a proposed use not impair the public health, safety or the general welfare, and that it be in harmony with the surrounding properties, the commission properly could have considered those factors in denying the plaintiff's application.

Finally, the plaintiff claims that the list of special exceptions outlined in § 500[15] of the regulations, which

---

[15] Section 500 of the regulations provides: "The following uses are declared to possess such special characteristics that each must be considered as a special exception. They are permitted in any zone by the Plainville Town Planning and Zoning Commission, provided a public hearing is held and subject to the site plan provisions and guides to the Commission set forth in Article 6.

"1. Church

"2. Public or private school

enumerates eleven uses but does not include the removal of sand and gravel among those uses, constitutes an exclusive catalog of all special exceptions. The plaintiff contends that, if the commission had sought to include the removal of sand and gravel as a special exception, it easily could have done so by characterizing it as such in § 500 of the regulations. We disagree.

The Appellate Court concluded that § 500 is not an exhaustive list of special exceptions. *A. Aiudi & Sons, LLC* v. *Planning & Zoning Commission,* supra, 72 Conn. App. 510. The court reasoned that "[a]lthough § 500 lists certain uses that 'must' be considered to be special exceptions permitted in any zone, [it] does not state that this list is exclusive." Id. Accordingly, the Appellate Court determined that the plaintiff's application, which was submitted pursuant to § 910 (2), could constitute an application for a special exception. See id., 510–11.

We previously have noted that "[z]oning regulations, as they are in derogation of common law property rights, cannot be construed to *include or exclude by implication what is not clearly within their express terms.*" (Emphasis added.) *Planning & Zoning Commission* v. *Gilbert,* 208 Conn. 696, 705, 546 A.2d 823 (1988). We also have noted that, "[w]henever possible, the language of zoning regulations will be construed so

"3. Library
"4. Public museum
"5. Public or private convalescent home
"6. Hospital or clinic
"7. Park or playground operated by a community association or nonprofit corporation located in the Town of Plainville, or by an employing corporation for the benefit of its employees or by a governmental unit.
"8. Public or private cemetery
"9. Town Hall, Police Station or Firehouse
"10. Public utility, building or facility
"11. Any other similar educational, religious, philanthropic, fraternal or governmental use." Plainville Zoning Regs., art. 5, § 500 (1989).

that no clause is deemed superfluous, void or insignificant." Id.

The plaintiff asks us to read into § 500 language designating the list of special exceptions contained therein as exhaustive. The language of § 500 does not indicate, however, that the list of special exceptions contained therein is exhaustive; see Plainville Zoning Regs., art. 5, § 500 (1989); and, consequently, we cannot interpret § 500 as an exhaustive list of special exceptions as the plaintiff urges. In addition, § 500 provides that the enumerated eleven uses "are declared to possess such special characteristics that each *must be* considered as a special exception." (Emphasis added.) Id. Section 500 does not state, however, that the uses enumerated therein possess such special characteristics that those, and *only those*, uses are considered as special exceptions. Accordingly, we conclude that § 500 outlines uses that unequivocally qualify as special exceptions, but does not operate to exclude other potential uses from this category that are set forth elsewhere in the regulations.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.